OSCAR DITTMER v. THE STATE.

No. 2518. Decided April 29, 1903.

**1.—Continuance—Assault to Murder.**

An application for continuance is properly overruled where no diligence is shown to procure the witness, where the residence of the witness is not stated and where the record fails to show that said witness was present at the difficulty.

**2.—Assault to Murder—Evidence—Threats.**

On a trial for assault to murder, evidence of threats by defendant, which are directly made against the injured party, is admissible.

**3.—Same—Charge—Self-Defense.**

See opinion for charges as to self-defense, on a trial for assault to murder, which are held as fair as defendant could demand; and where the court did not err in failing to charge with reference to pursuit where the evidence showed that the injured party said to defendant, "You G—d d—d son of a bitch, I'll kill you," and immediately started into the house, about sixty feet away, to get a gun, whereupon defendant shot him; the said charges instructing to acquit if defendant believed that he was in danger of death or serious bodily injury, unless the jury believed he, defendant, provoked the difficulty.

Appeal from the District Court of Karnes. Tried below before Hon. James C. Wilson.

Appeal from a conviction of assault to murder; penalty, two years imprisonment in the penitentiary.

The indictment charged appellant with assault to murder one Will Neal, on the 15th day of July, 1902. The following is the substance of the important facts in evidence:

The witness Will Neal testified that "defendant ran up behind me and shot me. I was going to the house when he fired. When I got into the house I got my Winchester and came out there. I never saw defendant any more. I got my Winchester as quick as I could after he fired the first shot. I do not remember whether it was cocked or not. It was a 44 caliber Winchester. It was loaded. I do not know what I might have done if I had gotten my gun and got back before he got away. I threw my knife away and started to the house and he, the defendant, ran around and shot me. He shot me from behind."

Mrs. Will Neal testified that her husband, Will Neal, was going to the house and that the defendant, Oscar Dittmer, ran up and shot her husband, Will Neal, and that as soon as he shot he broke and run. "He was running the last time I saw him; he fired two shotes at my husband. The shooting was between the house and the barn. My husband was going towards the house when these shots were fired. After he came out and went back to the place where the shooting occurred."

The defendant, Oscar Dittmer, testified as follows: That the prosecuting witness, Will Neal, came up to where he, defendant, was unsaddling his horses, and Neal was sitting on the fence with his knife open, "and I asked him about some remarks he had made concerning me, and I told him that Mack Roeder had told me that he had been talking about me, and he said that Mack Roeder was a God-damned liar, and he, the witness Will Neal, advanced on me with the knife open. I called on him two or three times to stop but he refused to do so. I got out my pistol and told him to stop. He walked up in six or seven feet of me and stopped. He then threw his knife down and said, 'You God-damned Dutch son of a bitch, I am going to fix you, anyhow,' and started towards the house in a run. I called to him to stop two or three different times and he did not stop, and I pulled my six-shooter and fired at him twice; he had turned the gallery to enter the house when I fired at him. I thought my life was in danger is the reason I shot. I thought I would have to shoot to protect myself. I knew he had a pistol in the house; I saw him with a gun about three days before the difficulty; he had a Winchester. When he left and started towards the house I called to him to stop two or three times. I did not fire until he was near the gallery. He was in a foot or two of the steps when I fired. He was about sixty feet from the house when he broke and run for the house. When he advanced on me with the knife I backed towards the house. When he got off the fence and came towards me I was between him and the house; he followed me about thirty feet with his knife. When he was advancing on me with the knife I was in a position to shoot him. I did not care to shoot him without he forced it on me."

*John C. Goode* and *Bell & Browne*, for appellant.—The court erred in failing and refusing to charge the jury on the law of self-defense. The evidence raised and called for a charge upon the issues of self-defense as follows: "That the defendant had the right to pursue the prosecuting witness, Will Neal, if he believed the said Will Neal was going to his house for the purpose of getting his gun to kill the defendant or to do him serious bodily harm, and to anticipate his purpose and prevent him doing so, if possible." The evidence raised and called for a charge upon the issues of self-defense defining the right of the defendant to pursue his adversary if he thought his life was in danger, or that he was in danger of serious bodily injuries. Lynch v. State, 6 S. W. Rep., 190; Penal Code, art. 608; West v. State, 2 Texas Crim. App., 460; Johnson v. State, 50 S. W. Rep., 343;

Walden v. State, 29 S. W. Rep., 273; Vincent v. State, 9 Texas Crim. App., 303; Henry v. State, 9 Texas Crim. App., 358; Walden v. State, 34 Texas Crim. Rep., 92; Garner v. State, 34 Texas Crim. Rep., 356.

*Howard Martin,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of assault with intent to murder, and his punishment assessed at confinement in the penitentiary for a term of two years.

Appellant insists that the court erred in overruling his application for continuance. The indictment was returned September 25, 1902, and appellant was arrested on Spetember 30th. On October 8th the case was continued by operation of law. On March, 12, 1903, appellant filed his motion for continuance. It appears from the bill of exceptions that appellant had a subpoena issued for witness Crain on March 9th, the trial being had on March 13th. Appellant states that he expected to prove by the witness Crain that he was present at the time of the difficulty, and that he heard prosecuting witness, Will Neal, say to defendant, "You God-damned son of a bitch, I'll kill you, anyhow," and immediately rushed into the house and got his gun and presented the same at defendant, who was retreating from the house. As to the residence of the absent witness, the application states, "that defendant is informed said witness is now a resident of Karnes County, and that defendant has seen said witness within the last thirty days in the town of Runge, Karnes County." There is a total absence of any diligence to secure the attendance of said witness. The record does not show that witness was present at the difficulty. Nor is there any reasonable probability of securing said witness at another term, since appellant fails to state the residence of the witness. The court did not err in overruling the motion for continuance.

Bill of exceptions number 2 complains, that the State's witness Otto Roeder was permitted to testify that he was present in the saloon in the town of Runge, late in the evening, before the difficulty took place between defendant and Will Neal; and witness had a conversation with defendant at that time, in which conversation defendant said: "Will Neal had been talking about him." And later, in the same conversation, he stated that he (witness Roeder) might hear of him (defendant) being in the lockup before the next day for killing the damn son of a bitch; and, at the same time, showed witness some pistol cartridges on the counter. "We had been talking about defendant's troubles with Will Neal just before that and had not talked about troubles with anybody else that I know of." Appellant objected to this testimony because the same was irrelevant and incompetent and did not call the name of the prosecuting witness, Will Neal, or allude to him in any way, by which witness Roeder could conclude he was talking about Neal or had any reference to Neal. To support appellant's contention, he cites the case of Gaines v. State, 53 S. W. Rep., 623; Strange v. State, 38 Texas Crim.

Rep., 280; Godwin v. State, 38 Texas Crim. Rep., 466; Holley v. State, 39 Texas Crim. Rep., 301. However, these cases do not support appellant in the position here taken, since the bill before us clearly indicates that the threat detailed by the witness was the threat against prosecuting witness Will Neal. The above cited authorities merely hold that a general threat that does not directly or circumstantially relate to the injured party is not admissible, but all the authorities hold that where the threat is directly towards the injured party, they are admissible. We do not think the court erred in admitting the testimony.

Appellant's third bill of exception is an exception to the charge of the court on the ground that the same failed and omitted to charge the jury distinctly upon all the law applicable to the case as demanded by the evidence, in this: "That defendant had a right to pursue prosecuting witness Will Neal, if he believed said Neal was going to his house for the purpose of getting his gun to kill defendant or do him serious bodily harm, and to anticipate his purpose and prevent him from doing so, if possible." The charge of the court on self-defense, is as follows:

"Upon the law of self-defense, you are further instructed that, if from the acts of the said Will Neal, if any, or from his words coupled with his acts, if any, there was created in the mind of defendant a reasonable apprehension that he (defendant) was in danger of losing his life or of suffering serious bodily harm at the hands of said Will Neal, then defendant had the right to defend himself from such danger, or apparent danger, as it reasonably appeared to him at the time, viewed from his standpoint. And a party so unlawfully attacked is not bound to retreat in order to avoid the necessity of killing his assailant. If you believe that defendant committed the assault as a means of defense, believing at the time he did so, if he did do so, that he was in danger of losing his life or of serious bodily injury at the hands of said Will Neal, then you will acquit defendant, unless you further believe from the evidence, beyond a reasonable doubt, that defendant sought the meeting with the said Will Neal for the purpose of provoking a difficulty with said Will Neal, with intent to take the life of said Will Neal, or to do him such serious bodily injury as might probably end in the death of Will Neal, and, if you so believe from the evidence beyond a reasonable doubt, then you are instructed that, if defendant sought such meeting for the said purpose and with such intent, defendant would not be permitted to justify on the ground of self-defense, even though he should thereafter have been compelled to act in his own self-defense; but, if he had no such purpose and intention in seeking to meet the said Will Neal, then his right of self-defense would not be forfeited, and he could stand his ground and defend himself by the use of such means of defense as the facts and circumstances indicated to be necessary to protect himself from danger, or what reasonably appeared to him at the time to be danger.

"If you believe that the said Will Neal by his acts and conduct, or by his words coupled with his acts, reasonably induced defendant to believe

that he intended and was about to attack defendant with a deadly weapon, or did any act which reasonably indicated to defendant that he, said Will Neal, intended and was about to attack defendant with a deadly weapon, which would probably cause the death or serious bodily injury of defendant; and if the acts of said Will Neal or his words coupled with his acts, if any, reasonably created in the mind of defendant at the time, viewed from the defendant's standpoint, a reasonable expectation or fear of death or some serious bodily injury, and you further believe that defendant, then and there moved and actuated by such reasonable expectation or fear of death or serious bodily injury, if any, shot the said Will Neal, then, under such circumstances, it would be in his lawful self-defense, and if you so believe you will acquit defendant." And in addition to the above objections, in his motion for new trial appellant insists that the charge is erroneous because, in effect, it "told the jury it was necessary for prosecuting witness Will Neal to have been guilty of such conduct, or to have done some act, or used words coupled with his acts, which indicated to defendant that he was about to attack defendant with a deadly weapon, before he would have been justified in shooting prosecuting witness Will Neal. And which predicated defendant's entire right to defend himself on the theory that he was about to be attacked with a deadly weapon. And the evidence plainly shows that prosecuting witness Will Neal first attacked defendant with a pocketknife, and as a matter of law defendant would have the same right to defend against such an attack, if he believed or had reason to believe that his life was in danger or he was in danger of serious bodily injury, as he would have had if the attack was made with a deadly weapon. And the evidence plainly indicates that this first attack was only temporarily suspended on the part of prosecuting witness Will Neal until he could get to the house and secure his gun, and where he would be better protected and sheltered, and from which point he intended to continue the attack commenced by him with the pocketknife."

The charge of the court in question ·is not restrictive as in the cases of Lynch v. State, 24 Texas Crim. App., 364; Bush v. State, 40 Texas Crim. Rep., 540. And see Harrington v. State, 2 Texas Ct. Rep., 888. Under these authorities, as we understand the law to be, if the danger is imminent and pressing, defendant has the right of self-defense from such danger; but if it is a future contemplated danger and contingency, a remote possibility or probability, defendant has no right, under such circumstances, to shoot in his supposed self-defense. According to appellant's evidence, the injured party said to defendant, "You Goddamned son of a bitch, I'll kill you," and immediately started into the house, about sixty feet away, to get a gun, and defendant then shot the injured party. Now, it will be seen that the above quoted charge tells the jury that if defendant believed, at the time he shot the injured party, he was in danger of losing his life, or of serious bodily injury at the hands of the injured party, to acquit defendant, unless you further be-

lieve from the evidence that defendant provoked the difficulty. This charge certainly is as liberal as the facts of this case authorize. In this connection, however, appellant cites us to the case of Johnson v. State, 50 S. W. Rep., 344. But there is no evidence in this record showing that appellant pursued the injured party. The parties were standing on the ground within about sixty feet of the house. Appellant insists that the injured party made the above declaration and started to the house, and he shot, believing he was going to get a gun. Under the facts of this case, we think the charge of the court is favorable to appellant and as fair as he could demand under the law, and it was not the duty of the court to charge on the law of pursuit.

No error appearing in the record, the judgment is affirmed.

*Affirmed.*