**Leroy JOHNSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 47442.

Court of Criminal Appeals of Texas.

Jan. 23, 1974.

Alvan N. Wells, Jr., Killeen, C. Gordon Metcalf, Temple (On appeal only), for appellant.

Joe Carroll, Dist. Atty., and Troy C. Hurley, Asst. Dist. Atty., Belton, Jim D. Vollers, State's Atty., and Buddy Stevens, Asst. State's Atty., Austin, for the State.

## OPINION

REYNOLDS, Commissioner.

Appellant Leroy Johnson was convicted of, and assessed punishment of twenty years confinement for, the offense of murder.

Appellant was charged with killing Mary Torres by shooting her with a gun on August 5, 1972. Appellant admitted shooting the deceased with a pistol, but contended the shooting was excused or justified. The jury rejected the defenses of accident and self-defense. A statement of the facts is required.

Responding within two minutes to a radio broadcast of a shooting, Sergeant William C. Miller of the Temple Police Department arrived at the address given. He observed appellant, whose arms were folded so that his hands were not visible, leaning on the trunk of a vehicle. As Sergeant Miller approached appellant, another police officer, Sergeant Payne, arrived. Sergeant Miller advised appellant that he was a police officer, asked him not to move his hands in any way, and placed his hand on his gun. Appellant said, "you won't need that, the gun is in the car." Subsequently, Detective Sergeant Willroy Pitrucha, in the presence of Sergeants Miller and Payne, removed appellant's pistol from under the front seat of the automobile on which appellant was leaning.

Sergeant Miller "patted him (appellant) down" for a weapon and found none, at the same time asking if anyone had been shot and stating he had a report of a shooting. Appellant replied, "The problem is in the house." Requesting Sergeant Payne to watch appellant, Sergeant Miller started toward the house, and appellant and Sergeant Payne followed. As they

neared the house, appellant said, "the door is locked and I have the key," and then produced the key. Sergeant Miller took the key, opened the padlocked door, and at this moment appellant said, "I shot my girl friend. She's in the front room." Mary Torres, the deceased, was found in the front room, her feet extending some eight inches into the dining room adjoining. Not more than two minutes had elapsed from the time of Sergeant Miller's arrival until the body of the deceased was found.

The deceased died from a bullet wound inflicted in the back of her head. When the pistol was recovered from the automobile, it was determined to be a .32-caliber gun and was fully loaded with six live shells. It was a double action revolver and is fired by either pulling the trigger or pulling the hammer back and then pulling the trigger. Found in the house was a box, designed to hold fifty shells, containing 39 live .32-caliber shells. Sergeant Pitrucha found two spent .32-caliber cartridges, one in a bedroom and the other in the front room, and a spent slug or bullet in the front room. A bullet was recovered from the head of the deceased.

Sergeant Payne testified that he placed appellant under arrest, warned him of his constitutional rights, and placed him in custody of Officer Townsend. Officer Townsend talked with appellant at the scene some fifteen minutes after appellant was arrested by Sergeant Payne. Officer Townsend's testimony was that he, in the presence of Officer Conway, orally advised appellant of all his constitutional rights. Mike Hughes, later employed as a dispatcher by the police department, testified he was present and heard Officer Townsend warn appellant of his rights. According to Officer Townsend, appellant said he understood his rights and made a statement.

Ten minutes later, Officer Townsend reduced the oral warning previously given to writing, again advised appellant of his rights as written, and asked appellant to read his rights from the writing. It appeared to Officer Townsend that appellant read the written rights. The warning is shown by the record to comply fully with the requirements of Article 38.22, Vernon's Ann.C.C.P.

As appellant made his statement, Officer Townsend committed the statement to writing in appellant's own words. The warning and the statement are on five pages, each of which is headed "State of Texas County of Bell."

Appellant was then taken to the Temple police station where his constitutional rights were repeated to him. Appellant read his rights as written at the beginning of the statement, read the statement, and then signed each page. Each page was signed and sworn to in the presence of a notary public in and for Bell County, Texas, who affixed his signature and seal to each page. Officer Townsend testified that he did not tell appellant the statement would help him.

Appellant admitted that at the police station he was advised of his rights, that he read them in the statement, and that he signed each page; however, he denied he had received any other warning. He stated he signed the statement because Officer Townsend said it would help him, although he admitted the officer also told him the statement could hurt him.

Excerpted from the written statement are appellant's comments as follows:

". . . I think we just squabbled all the time . . . We got home . . . she got to looking, and found the gun that I bought today . . . The gun was loaded . . . She fired a shot that hit by the door. . . . I then took it away from her and we started arguing. She said that she was going to get me yet, and that one of us was going to walk out alive tonight. She started going toward the kitchen, and when she reached the door going into the dining room, I let her have it in the

back of the head. I mean that I shot her in the back of the head. She fired the first shot, and I don't know if she meant to hit me or not . . . Oh, I forget, after I shot her I stayed in there about 10–15 minutes, then I came out and put the gun under the seat of her car. I then went across the street, and had the people there call the police."

Appellant's in-court version of the event is portrayed by his testimony as follows:

"After I had turned around and saw her with the gun and she told me, well, she was going to kill me, said one of us would walk out alive . . . I asked her to put down the gun and we argued, passed words, and then I made a couple of steps toward her and she stopped me by cocking the gun. She just said, 'Don't come no further,' or she would kill me . . . I made a break for her. She was standing—she had came forward a little and I made a break for her aiming to get the gun, and we wrestled . . . I grabbed her from the side and turned her around and got behind her . . . I had my arms around her and we wrestled a little and the gun went off . . . She cocked the gun again during our wrestling . . . I managed to get the gun out of her—get her arms loose and pull the gun over her head like this, got the arm over her head like this . . . All I know is, I remember pulling the gun over her shoulder— . . . —and the gun went off. When I snapped the gun from her hand, it went off."

Appellant predicates his appeal on four grounds of error. For clarity, the grounds will be considered in reverse order.

The fourth and last ground is directed to the admission in evidence of appellant's oral and written statements in violation of Art. 38.22, V.A.C.C.P.

■ It was error, appellant asserts, that the trial court initially made no finding, either oral or written, quoting the statements found to have been, and admitted as, voluntarily given, and the court entered an order of voluntariness only after appellant had objected to the court's charge. The assertion does not reflect error.

At the offer of and objection to both the oral and written statements, the trial court promptly and properly retired the jury and heard evidence bearing on the voluntariness and admissibility of the statements. At the conclusion of the hearing respecting the oral statements made·by appellant at the scene of the shooting, the court found and orally announced that beyond a reasonable doubt the statements were voluntarily made, were a part of the res gestae and were admissible as a matter of law. A written order so stating was entered that day.

Later, as the last proceeding of the day, the court heard evidence on the voluntariness of the written statement. The court found and orally announced there was no doubt that the statement was voluntarily made and was admissible. A written order embodying the correct findings for admissibility of the written statement was entered the next day. Both orders were filed of record prior to presentation of the court's charge to the jury.

The requirement of Art. 38.22, V.A.C.C.P., is that "If the confession or statement has been found to have been voluntarily made and held admissible as a matter of law and fact by the court in a hearing in the absence of the jury, the court must enter an order stating its findings, which order shall be filed among the papers of the cause." There is no statutory requirement that the order quote verbatim the statements found voluntarily made and admissible, and we decline to engraft such a requirement on the statute, particularly since there can be no doubt about the identity of the statements being questioned. Moreover, the entering and filing of the orders after the statements held admissible were received in evidence does not require reversal absent a showing of prejudice.

Jones v. State, 437 S.W.2d 822 (Tex.Cr. App.1969). Accord: Gaston v. State, 435 S.W.2d 858 (Tex.Cr.App.1969), where, although the court dictated findings of voluntariness of the statement into record, the order thereon was not filed until after appellant filed his appellate brief complaining of the failure to make and file the order.

We are not persuaded by appellant's claim that he was under arrest when he made the oral statements to Sergeant Miller and, since he had not been warned of his rights, the statements were inadmissible. The only statement appellant made in response to a question was non-responsive and was not inculpatory; the other statements were spontaneous and, beginning at the time of and concluding within two minutes after the arrival of the officers, were admissible under the verbal act doctrine, frequently referred to as res gestae, and as spontaneous exclamations. Ramos v. State, 419 S.W.2d 359 (Tex.Cr. App.1967). Even if appellant were then under arrest, the statements were also admissible as a part of the res gestae of the arrest. Dunlap v. State, 462 S.W.2d 591 (Tex.Cr.App.1971).

No more persuasive is appellant's contention that no waiver of his rights was obtained prior to the taking of the written statement. The testimony of the officers is that appellant was fully advised of and then waived his rights before he gave the statement reduced to writing. Appellant testified that he was not warned of his rights before his statement was committed to writing, although he conceded that before he signed the statement he was not only advised of his rights, but that he actually read them and, having been so informed, thereafter signed the statement. Considering the totality of circumstances, the evidence is ample to support the trial court's finding that appellant knowingly, intelligently and voluntarily waived his rights before he gave and signed the statement. Thomas v. State, 458 S.W.2d 817 (Tex.Cr.App.1970).

Neither do we agree with appellant's position that the written statement is inadmissible because it does not show the place of the warning as prescribed by Art. 38.22, subd. 1(b), V.A.C.C.P. The statement shows on its face that the place of the warning was Bell County, Texas; nevertheless, it is not necessary that the voluntariness and admissibility be predicated on this showing, for the statement contained all of the requisites of Art. 38.22 subd. 1(c) for voluntariness and admissibility. See Hassler v. State, 473 S.W.2d 513 (Tex.Cr.App.1971). The fourth ground is overruled.

The court charged the jury as to appellant's right of self-defense. The third complaint is grounded on the omission of an instruction on appellant's right to pursue and kill the deceased. The thrust of the argument is that appellant's written statement gave rise to reasonable beliefs that the deceased was retreating to obtain another weapon with which to renew her attack and that her spoken words showed that she intended to kill appellant, thereby entitling appellant to the instruction. Appellant relies on Hunter v. State, 137 Tex. Cr.R. 289, 128 S.W.2d 1176 (1939), and cases with similar pronouncements, for the holding that an accused has, and the jury should be charged on, the right to pursue and shoot his attacker so long as it reasonably appears his life is in danger. But this right, as pointed out in *Hunter*, exists only *if* it reasonably appears to the accused that such would be necessary for his protection or that the armed deceased is seeking a vantage point from which to renew the attack. However, the rule of those cases is not applicable to the evidence in the case here.

Here, even disregarding appellant's incourt testimony and accepting only his written statement as appellant would have us do, there is no testimony that the deceased was either seeking another weapon or that she was retreating to a vantage point from which to renew her attack. Decisive of the complaint is that the state-

ment—and, for that matter, appellant's testimony—does not show that appellant pursued the deceased. Absent such testimony, it was not the duty of the court to charge on the law of pursuit. Ditmer v. State, 45 Tex.Cr.R. 103, 74 S.W. 34 (1903); McElroy v. State, 455 S.W.2d 223 (Tex.Cr. App.1970). The third ground is overruled.

 Appellant claims, in his second ground, that the court's charge was erroneous for failure to charge, pursuant to Art. 1223, Vernon's Ann.P.C., on the presumption of the deceased's intent to kill from her use of a deadly weapon. Among the cases cited by appellant holding that the presumption charge is required when raised by the evidence is Sistrunk v. State, 486 S.W.2d 304 (Tex.Cr.App.1972). That case, in holding the charge was obligatory under the evidence there, listed three requirements that must be shown by the evidence to exist before the statutory presumption is raised. These requirements are that: (1) the deceased had a weapon; (2) the weapon, in the manner of its use, was calculated to cause death or serious bodily injury; and (3) the deceased was using the weapon against the accused (or a third party) at the time the accused killed the deceased. *Sistrunk* cites De Vault v. State, 159 Tex.Cr.R. 360, 264 S.W.2d 126 (1953), as authority for these requisites.

In *De Vault*, the charge was not required because the evidence did not show the presence of any of the three requisites. The situation described by the evidence in the case at bar is the same as in *De Vault*. Here, at the time appellant killed the deceased, appellant had taken possession of the pistol, and the deceased was using no weapon calculated to cause death or serious bodily injury at the time she was killed. Absent any of the requisites, the charge is not appropriate. More appropriately, the evidence required a fair charge on the right of self-defense, Threadgill v. State, 156 Tex.Cr.R. 157, 239 S.W.2d 813 (1951), which was given. The second ground is overruled.

 In his initial ground of error, appellant challenges the sufficiency of the evidence to support the guilty verdict. The argument is that the evidence corroborates appellant's testimony of self-defense and, therefore, the state failed to prove his guilt beyond a reasonable doubt. In essence, appellant's complaint is that the jury, by rejecting his testimony of self-defense, gave more credence to the evidence of culpability than to that of justification. The determination was for the jury. The jury, as the exclusive judge of the credibility of the witnesses and the weight to be given their testimony, may accept all, part or none of the testimony of any one witness in determining the facts proved. The evidence is sufficient to sustain the verdict and, being supported by the evidence, the verdict will not be disturbed on appeal. Blanton v. State, 144 Tex.Cr.R. 198, 161 S.W.2d 1063 (1942). The first ground is overruled.

The judgment is affirmed.

Opinion approved by the Court.