**Russell Andrew BURROW, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 44957.**

Court of Criminal Appeals of Texas.

May 24, 1972.

Rehearing Denied July 19, 1972.

Emmett Colvin, Jr., Dallas, Jack Gray, John L. Sullivan, Denton, for appellant.

Henry Wade, Dist. Atty., W. T. West-moreland, Asst. Dist. Atty., Dallas, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

This is an appeal from a conviction for arson. The jury assessed the punishment at nine years.

The sufficiency of the evidence is challenged. The home of Doris Burrow (Smith at the time of trial) in Irving was burned. A few days before the fire she obtained the house as a result of a divorce decree entered against the appellant. She testified that some three or four weeks before the fire the appellant told her that she would never live in the house because he would blow it up or burn it down. Some two days before the fire, the appellant called her on the telephone and asked if she had enough insurance to bury her.

Rita Ann Hill, the daughter of the complaining witness and the appellant, testified that she and her seven-week-old son were living with her mother. On the evening of the fire she, her baby and mother had been to a friend's residence to watch a color television program and returned home at approximately 11:00 p. m. They drove the car into the garage but not all the way because two bicycles were in the back part. There was nothing else in the garage except the bicycles. The complaining witness retired. Later, the daughter testified that she heard some noises as though someone were moving things around in the garage closet where gasoline was kept for the mower. She awakened her mother and told her that someone was in the garage. The complaining witness arose, went outside, then ran back into the house and shouted, "Rita Ann, get the baby, your daddy has set the house on fire." Rita then observed that the garage was on fire and that it had spread to the house.

The complaining witness testified substantially the same as her daughter did including the testimony that the two bicycles were the only other things in the garage except the car and that the gasoline was kept in the garage closet. She also testified that she went outside, heard a big "swoosh", observed an orange glow and saw the appellant crouched over, leaving the garage.

Don R. Magonahe, the assistant fire marshal for the City of Irving, testified

that he arrived at the scene while the fire was in progress, remained there until the fire was put out, and then participated in the investigation as to its cause. He further testified that the sheetrock ceiling of the garage just in front of the automobile had fallen, indicating that there was a very hot fire in that area, because the sheetrock was of a type that should resist a normal fire for one hour, according to Underwriters Laboratory and NFPA tests and publications. The popping of chunks of concrete from the floor in front of the car was indicative of the fact that a flammable liquid had ignited on the floor. Cans were on the floor in front of the car, sitting upright. The manner of burning showed that the fire had started on the floor and burned upward. The glass in the headlights on the car had been "sucked out" rather than cracking, indicating a very hot fire in that area. The car battery was not discharged, as it would have been had there been a short in the car wiring. The front tires of the car were burned, the rear ones were not. The witness testified that, in his opinion, based on evidence at the scene and his experience, the fire was of incendiary origin as distinguished from accidental or spontaneous.

J. D. Mitchell, Fire Marshal for the City of Irving, testified that the fire alarm was turned in at 12:24 a. m. and that he found containers in the garage on the floor near the front car bumper. He could see where flammable liquids had been poured out or had been on the floor and had caused the terrific buildup of heat in the vicinity. He testified that where flammable liquids have been burned on such a floor, the concrete will flake up, peel back and will pop up. There was a definite area where the concrete had flaked off between the bumper and the closet door. He testified that one of the three containers had contained some three inches of flammable fuel when the fire started because of the different color after the fire. The other two were empty.

He testified that it was a cool misty night and that the fire was not caused by faulty wiring, lightning, gas heater or overheated car, and that he had eliminated every possible thing that could have caused the fire, other than one of incendiary origin.

He also testified that he saw the appellant at the police station at 7:00 o'clock Sunday night (some 17 hours after the fire) and that his hair and eyebrow were singed on the right side.

The appellant testified that when they were divorced his then wife, the complaining witness, was awarded the house that burned. He denied that he threatened to burn the house or had asked the complaining witness if she had enough insurance to bury her. He testified that he drove by her house that night while the fire was in progress but before the fire truck had arrived. He saw his former wife on the front porch and she was hysterical and started screaming that he had set the house on fire. He testified that he then left.

He explained his singed hair and eyebrow by stating that he was attempting to start another car by priming it with gasoline and the carburetor exploded causing the burn.

He and other witnesses testified that he was at a night club at the time the fire was started and could not have been at the house. The jury chose not to accept his defense.

■ We hold that the jury had sufficient evidence to conclude appellant's guilt.

■ Next, complaint is made because the court permitted the fire marshal and his assistant to testify where the fire originated and that it was of incendiary origin. He relies upon Wimpling v. State, 171 Md. 362, 189 A. 248; People v. Saunders, 13 Cal.App. 743, 110 P. 825; Beneks v. State, 208 Ind. 317, 196 N.E. 73; Commonwealth

v. Rodziewicz, 213 Mass. 68, 99 N.E. 574; People v. Grutz, 212 N.Y. 72, 105 N.E. 843.

 The objections to the testimony of the fire marshal and the assistant were that the opinions sought were not in response to a hypothetical question; that it did not show what facts, if any, were to be considered by the witness in answering the question and that such an answer involved a rank conclusion based upon a limited investigation. There was no objection in the record upon which he now bases his complaint, hence, it is not properly before us for review. See Lawhon v. State, Tex.Cr. App., 429 S.W.2d 147, and 5 Tex.Jur.2d, Section 41, page 68.[1]

Next, the appellant complains that the opinions of the experts who investigated the cause of the fire were based in part upon what others had told them and the court should not have permitted such testimony because it violated his right to confrontation. There is no showing what information they received from others which aided them in forming an opinion. The following statement is applicable:

"We do not think that the triers of the facts may properly be deprived of the opinion of an expert witness simply because in the course of an extensive investigation he may have received a bit of information from some unnamed person, the truth of which was not shown. We are unwilling to hold that the testimony of an expert witness, whose opinion is based largely on facts actually known to him or proved to be true, is automatically rendered valueless and inadmissible merely because in the course of his investigation he heard someone make a casual hearsay statement which perhaps had some slight part in the formation of his opinion." Bryant v. Trinity Univer-

sal Insurance Company, 411 S.W.2d 945 (Tex.Civ.App.Dallas 1967, RNRE).

No error has been shown. The judgment is affirmed.

---

[1]. The rule in Texas is apparently contrary to appellant's contention. Experts may testify, after an investigation, that a fire was of incendiary origin. See Payne v. Hartford Fire Insurance Company, 409 S.W.2d 591 (Tex.Civ.App.1961, RNRE), and 88 A.L.R.2d 230.