Argued and submitted April 17, affirmed November 12, 1986, reconsideration denied January 16, petition for review allowed March 3, 1987 (302 Or 657)

# STATE OF OREGON,
*Respondent,*

*v.*

# DIANE HANSEN,
*Appellant.*

(84-1128; CA A34714)

728 P2d 538

Robert J. McCrea, Eugene, argued the cause and filed the brief for appellant.

Terry Ann Leggert, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

**BUTTLER, P. J.**

Defendant was convicted by a jury of sodomy in the third degree. ORS 163.385. On appeal, she contends that the trial court erred in ruling that the victim was under the age of 16, in admitting expert testimony describing common techniques employed by perpetrators of sex crimes against children and in excluding evidence of the victim's statements to her psychotherapist and school counselors. We affirm.

On December 4, 1983, defendant, who was a school teacher, and the victim, who was one of her students, traveled to the Oregon coast. That afternoon, defendant rented a motel room in which she engaged in the activity underlying her conviction. The child's sixteenth birthday was on December 5, 1983.

Defendant contends that she is not guilty of sodomy in the third degree, because the child was not "under 16 years of age" on December 4, 1983.[1] She bases her contention on the common law rule that a person attains a given age on the day before the person's birthday,[2] and argues that the common law rule is applicable, because there is no statutory provision in Oregon that provides a different manner for determining a person's age. The state contends that the common law rule was abrogated by the enactment of the Oregon Criminal Code in 1971, although there is no specific provision of the code that does so.

■ Common law remains the law of this state unless it has been abrogated or changed by legislative action. *State v. Blacker,* 234 Or 131, 380 P2d 789 (1963); *State of Oregon v. Black,* 193 Or 295, 236 P2d 326 (1951). However, in *State v.*

---

[1] ORS 163.385 provides:

"(1) A person commits the crime of sodomy in the third degree if the person engages in deviate sexual intercourse with another person under 16 years of age or causes that person to engage in deviate sexual intercourse.

"(2) Sodomy in the third degree is a Class C felony."

[2] The parties are in agreement with respect to the common law rule, which is based on a legal fiction that a person "lives" the entire day of his or her birth. The rule is not without redeeming features. One need only to consider the plight of Frederick in Gilbert & Sullivan's *Pirates of Penzance,* who was apprenticed to a pirate king until he became 21. Because Frederick was born on February 29, the pirate king refused to release him, although he had lived 21 years, because he had had a birthday only once every four years. The common law rule would resolve that dilemma.

*Hudson,* 56 Or App 462, 642 P2d 331, *rev den* 293 Or 146 (1982), we held that the common law "year and a day rule" was no longer followed in Oregon, even though it had not been expressly replaced or repudiated by the legislature.[3] We noted that the Oregon Criminal Code was derived from the Model Penal Code, which did not expressly incorporate the rule, and the New York Penal Code. In New York, the common law rule had been abrogated by judicial decree before 1971; accordingly we applied the doctrine that " '[i]n "borrowing" a statute from another state the legislature is presumed to adopt the interpretation of that statute reached by the courts of the other states, absent any indication to the contrary.' * * *" 56 Or App at 466.

The common law rule for computing a person's age was also abrogated in New York by the New York Court of Appeals in 1966. The court adopted, in its stead, the rule that one attains a given age on his or her birthday. *People v. Stevenson,* 17 NY2d 682, 269 NYS2d 457, 216 NE2d 615 (1966). That the Oregon legislature intended to adopt that rule is evidenced by the legislative commentary to the general incapacity to consent statute, ORS 163.315. The statute provides that a person is considered incapable of consenting to a sexual act if the person is under 18 years of age. The legislative commentary provides, in part:

> "A person is under 18 years of age if he has not reached his eighteenth birthday, that is, up to and including the day before his eighteenth birthday." Oregon Criminal Code of 1971, 133 (1975 ed).

■ Although the legislative commentary is not binding on us, there is no reason to assume from the legislature's probable intent with respect to the consent statute that it intended to adopt a different method for determining when a person is under the age of 16 for the sodomy statute. Accordingly, it is appropriate to apply the "borrowing" doctrine in this case, and we hold that, for the purpose of interpreting ORS 163.385, the legislature adopted the New York rule that a person attains the age of 16 on his or her sixteenth birthday.

---

[3] The common law rule is "that a death was not a homicide unless it resulted within a year and a day from the time of the act which was alleged to have caused it." *State v. Hudson, supra,* 56 Or App at 464.

The victim's sixteenth birthday was on December 5, 1983, and she was, therefore, under the age of 16 on December 4, 1983.

Defendant also assigns error to the trial court's allowing Detective Robson, who investigated the case, to testify over objection as an expert regarding common techniques employed by child abusers to get "close" to their victims. She challenges both Robson's qualifications as an expert and the nature of the testimony itself. The state argues that Robson was qualified and that his testimony is admissible to explain why, when questioned about her relationship with defendant, the child had originally denied that the act had occurred.

■ Expert testimony describing the reactions of typical child victims of sexual abuse is admissible in sex abuse cases if it will assist the jury in deciding whether or not the alleged abuse occurred. *State v. Middleton,* 294 Or 427, 657 P2d 1215 (1983); *State v. Dale,* 75 Or App 453, 706 P2d 1009, *rev den* 300 Or 451 (1985); *State v. Harwood,* 45 Or App 931, 609 P2d 1312, *rev den* 289 Or 337 (1980). In *Middleton,* expert testimony was offered, as the state contends it was here, to assist the jury in assessing the credibility of a child after evidence of prior inconsistent statements had been admitted. Defendant contends, however, that Robson's testimony goes beyond the scope of that found to be admissible in *Middleton,* in that it was offered as having its own probative value.

Defendant challenges only one aspect of Robson's testimony. However, to avoid taking it out of context, we quote Robson's testimony at some length:

"Q. Detective Robson, I believe where we left off was in how many cases of non-family abuse, sexual abuse, that you have investigated did you find that the victim would try to deny that anything sexual had occurred when talking with you?

"A. Most of the time, initially they do make a denial mainly because — (Interruption)

"* * * * *

"Q. On what do you base your statement that — I forgot where I left off. Let me back up.

"In how many — okay. We are talking about the victim denying when they initially talk with you. On what are you

basing your statement that you find it to be true that victims continue to deny?

"A.   On experience of cases that I have worked.

"Q.   What factors do you find present in these cases that have led you to this conclusion?

"* * * * *

"A.   Usually, there's a feeling of guilt, embarrassment, a feeling that they are in trouble, protecting the offender, reasons like this in order to keep the problems from surfacing any further at that time.

"Q.   And, in talking about protecting an offender, do you find that — do you find that victims will try to do that when they are talking to you?

"A.   Yes.

"Q.   And, in what ways?

"* * * * *

"A.   Minimizing.

"Q.   Minimizing what?

"A.   The activity that's being alleged, sexual activity, maybe even changing instances or even fabricating places that they have been and really weren't, just trying to deny a lot of the allegations initially just because of problems between themselves and the offender.

"Q.   What do you mean, 'fabricating places that they have been and really weren't'?

"A.   Well, saying they were home when the allegations were alleged to have taken place when in fact they were with the suspect."

The question and answer immediately following are those at issue here.

"Q.   Now, do you find certain common factors when you work with both the victims and the offenders in these non-family cases? Do you find certain factors or methods that an offender will use to get close to the victim?

"* * * * *

"A.   Yes, there are certain techniques. It's usually what I term a 'grooming process'. Usually, there's an extensive amount of testing that goes on both physically and psychologically. There is usually a lot of gift giving, a lot of affection, praising, rewards, anything to make the individual more

comfortable even to the extent of dealing with lots of people surrounding this particular person, just getting into a comfortable role; in other words, feeling comfortable and being close to an individual. Yes, they often establish some emotional dependency.

"Q. From the victim towards the offender?

"A. Yes.

"Q. Do you also find that there are particular victims — that there is some special characteristic about victims that make them susceptible to offenders in these non-family type cases?

"A. Yes.

"\* \* \* \* \*

"Q. Even after a victim has told, do you find them exhibiting certain characteristics that might be qualified under the word 'guilt'?

"\* \* \* \* \*

"Q. Do you find certain factors present in victims that even after telling that might be lumped under a label of feeling guilty?

"\* \* \* \* \*

"A. Okay. If I'm to understand the question, it is subsequent to the victim telling about the sexual activity or divulging it and what characteristics they show?

"Q. Yes.

"A. Well, they still maintain strong emotional dependency usually with the offender because it's usually a long-term grooming effect that has taken place. If the relationship has been long lived at all, that is intensified to where even though there's been a separation and divulging of information, they are still caring and there is still a close emotional tie there."

Expert testimony is admissible if it is based on specialized knowledge and, if believed, will assist the trier of fact to understand the evidence or to determine a fact in issue. OEC 702. The trial court has "a certain latitude of discretion" with respect to that determination, and its decision will not be disturbed if the question of admissibility reasonably could have been decided either way. *State v. Stringer,* 292 Or 388, 639 P2d 1264 (1982).

■■ Here, Robson testified that he has been involved in 350 to 400 investigations of alleged child abuse, including approximately 15 involving student-teacher relationships,

and that he has received 300 hours of specialized training. Although he had not been previously involved in a case involving a female teacher-female student relationship, he testified that his experience was not limited to cases involving heterosexual abuse. Given Robson's experience and training, the trial court did not err in finding him qualified to testify as an expert with respect to the child's post-abuse behavior. Because the nature of the testimony itself, taken in context, does relate to and helps to explain the victim's initial denial of abuse and her failure to disclose the abuse earlier, we find no error in the court's admitting it.

■     Defendant's final contention is that the trial court erred in ruling that statements that the victim had made to her psychotherapist regarding her relationship with defendant and her school records, which apparently contain reports concerning conversations that she had with her school counselor, were inadmissible, because they were privileged. She contends, however, that statements made to the psychotherapist are admissible under ORS 418.775(1),[4] which provides an exception to the psychotherapist-patient privilege set forth in OEC 504. With respect to child's school records, she asserts no ground for an exception to ORS 336.195, which provides that school records are confidential.[5]

---

[4] ORS 418.775(1) provides:

"In the case of abuse of a child, as defined in ORS 418.740, the psychotherapist-patient privilege, the physician-patient privilege, the privileges extended to nurses, to staff members of schools and to registered clinical social workers and the husband-wife privilege created by ORS 40.230 to 40.255 shall not be a ground for excluding evidence regarding a child's abuse, or the cause thereof, in any judicial proceeding resulting from a report made pursuant to ORS 418.750."

[5] ORS 336.195(1) and (3) provide:

"(1) All student records maintained by a school, educational institution or education service district shall be confidential, and except as hereinafter provided shall be open for inspection only in accordance with such rules as the board shall adopt.

"* * * * *

"(3) Release of student behavioral records for use in any proceedings, civil or criminal, in any court of this state shall be made only by the superintendent or a designated representative, or with the consent of the student or juvenile so confiding or to whom such records relate, if the student is 18 years of age or over, or if the person is a minor, with the consent of the parent or legal guardian of the person. Release shall be made only in the presence of an individual qualified to explain or interpret the records."

ORS 418.775(1) provides that the psychotherapist-patient privilege "shall not be a ground for excluding evidence regarding a child's abuse, or the cause thereof, in any judicial proceeding resulting from a report made pursuant to ORS 418.750." ORS 418.750[6] imposes a duty on any public or private officials who have reason to suspect that child abuse has occurred to report the suspected abuse to the Children's Services Division or to a law enforcement agency.

Defendant apparently contends that the requisites of ORS 418.750 are met by reports that the investigating officer filed with CSD and the Lincoln County District Attorney after he had reasonable cause to believe that sexual abuse had occurred. We agree with the trial court, however, that the record is unclear with respect to whether this prosecution resulted from a report filed in accordance with the statute.[7] ORS 418.750 imposes a duty on private and public officials to report suspected abuse to CSD or law enforcement agencies so that an investigation may be commenced. That duty is separate and distinct from a police officer's duty to report the results of the officer's official investigation. Accordingly, because defendant had the burden of showing that the exception to the patient-psychotherapist privilege is applicable, the

---

ORS 336.185(2) provides:

" 'Student behavioral records' are student records which include psychological tests, personality evaluations, records of conversations and any written transcript of incidents relating specifically to student behavior."

Assuming that the superintendent could be compelled to testify with respect to the records, defendant did not subpena the superintendent or state that she would do so if the court ruled that the evidence would be admissible.

[6] ORS 418.750 provides:

"Any public or private official having reasonable cause to believe that any child with whom the official comes in contact in an official capacity has suffered abuse, or that any person with whom the official comes in contact in an official capacity has abused a child shall report or cause a report to be made in the manner required in ORS 418.755. Nothing contained in ORS 40.225 to 40.295 shall affect the duty to report imposed by this section, except that a psychiatrist, psychologist, clergyman or attorney shall not be required to report such information communicated by a person if the communication is privileged under ORS 40.225 to 40.295."

[7] The trial court concluded that ORS 418.775(1) does not provide an exception to the patient-psychotherapist privilege to show "nonabuse," as distinguished from showing abuse. Because we conclude that there is no evidence that this prosecution resulted from a report filed in accordance with ORS 418.750, we do not reach that question.

trial court did not err in holding that the child's statements to her psychotherapist, as well as her school records, are inadmissible.

Affirmed.