Riley **KIRKPATRICK**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 05–86–01094–CR.

Court of Appeals of Texas, Dallas.

Dec. 22, 1987.

John G. Tatum, Dallas, for appellant.

Gary A. Moore, Dallas, for appellee.

Before HOWELL, STEWART and THOMAS, JJ.

HOWELL, Justice.

Appellant was convicted by a jury of indecency with a child. The trial court assessed punishment at ten years' confinement. We reverse and remand on a holding that it was error to allow expert opinion to the effect that the child complainant was telling the truth.

The prosecution was based on an incident allegedly occurring on March 24, 1986. Appellant, who was retired, lived with his common-law wife; she provided day care for children in her home. The seven-year-old complainant testified that, shortly after lunch, the common-law wife and the other children took a nap, but that she (the complainant) could not go to sleep. She stated that appellant asked her to come to the kitchen table where he was sitting alone, and that he then pulled down her jeans and panties, and then touched her in the "wrong spot," "in the middle of the legs," with his hand.

According to appellant's version of the facts, the complainant got up from her nap

to use the bathroom and returned to tell him that her zipper was stuck. Appellant testified that he fixed her zipper and that he never touched the complainant in the way she described. No medical evidence was adduced at trial, and there were no eyewitnesses to the alleged incident.

In points three through seven, appellant urges that the trial court erred in permitting expert witnesses to testify that (1) they could determine whether the complainant was telling the truth when she told them that she had been sexually abused, (2) in their opinion, the complainant was in fact sexually abused, and (3) the complainant exhibited the same behavioral characteristics as those exhibited by children who *in fact* had been sexually abused. With one exception,[1] defense counsel's objections to the admissibility of testimony concerning common behavioral characteristics and the complainant's credibility were overruled.

The admissibility of expert testimony in a child sexual abuse case (1) that concerns the alleged victim's credibility or (2) that compares behavioral characteristics of the complainant with those of other victims of abuse is an issue of first impression for this court. However, we perceive no reason why the admissibility of expert testimony in a child sexual abuse case should not be governed by the same rules of evidence that apply to all expert opinion testimony, notwithstanding the obvious temptation to liberalize those rules, given the offensive nature of child molestation. *See State v. Rivera*, 139 Ariz. 409, 413 n. 1, 678 P.2d 1373, 1377 n. 1 (1984).

■ We recognize that expert testimony is no longer objectionable on the ground that it "invades the province of the jury." *See Hopkins v. State*, 480 S.W.2d 212, 218 (Tex.Crim.App.1972). However, expert testimony in a criminal proceeding is admissible only when (1) the witness is competent and qualified to testify; (2) the testimony will assist the jurors, as triers of fact, in evaluating and understanding matters not within their common experience, *Chambers v. State*, 568 S.W.2d 313, 325 (Tex.Crim.

1. The trial court sustained an objection to the question, addressed to an expert witness, directly inquiring whether the expert had an opinion on the complainant's truthfulness.

App.1978), *cert. denied,* 440 U.S. 928, 99 S.Ct. 1264, 59 L.Ed.2d 484 (1979) (citing *Hopkins,* 480 S.W.2d at 218) (*see also* TEX. R.CRIM.EVID. 702[2]); and (3) the testimony's probative value outweighs its prejudicial effect. Rule 403. Because appellant has not challenged the competency or qualifications of the experts who testified in this case, the question before us narrows to (1) whether the experts' testimony was limited to providing information that was outside the jurors' common understanding or experience, and (2) whether the testimony's usefulness was substantially outweighed by the danger of *unfair* prejudice.

Our review is further limited to whether the court abused its discretion. *Steve v. State,* 614 S.W.2d 137, 139 (Tex.Crim.App. 1981); *Mullins v. State,* 699 S.W.2d 346, 348 (Tex.App.—Corpus Christi 1985, no pet.). However, such discretion is not unlimited. *Ginther v. State,* 672 S.W.2d 475, 477 (Tex.Crim.App.1984); *see also Abrams v. Interco, Inc.,* 719 F.2d 23, 28 (2d Cir. 1983) (appellate courts need not uphold "a purported exercise of discretion [that] was infected by an error of law"); *Williams v. State,* 159 Tex.Crim. 443, 449, 265 S.W.2d 92, 95 (1954) (on reh'g) ("an abuse of discretion usually means doing differently from what the reviewing authority would have felt called upon to do"). In some instances, the Texas Court of Criminal Appeals has restricted the use of psychiatric opinion testimony. *See, e.g., Hopkins,* 480 S.W.2d at 220 (psychiatric testimony not permissible for impeachment purposes). Conversely, the court has permitted psychiatric and psychological testimony for other purposes. *See, e.g., Rumbaugh v. State,* 629 S.W.2d

747, 755–56 (Tex.Crim.App.1982) (psychiatric testimony that defendant suffered from antisocial behavior rather than organic brain damage admissible to rebut testimony supporting insanity defense); *Ex Parte Harris,* 618 S.W.2d 369, 371 (Tex.Crim. App.1981) (psychiatric testimony that defendant was a sociopath held admissible). Because the courts of this state have not yet addressed directly the admissibility of psychiatric or psychological opinion testimony for the purposes present in this child sexual abuse case, we have analyzed the decisions of other jurisdictions, which permit such testimony in varying degrees.[3]

■ Expert testimony has been admitted widely for the purpose of explaining general behavior characteristics of child sexual abuse victims as a class. *See, e.g., State v. Moran,* 151 Ariz. 378, 381, 384, 728 P.2d 248, 251, 254 (1986), and cases cited therein; *State v. Hansen,* 82 Or.App. 178, 182–85, 728 P.2d 538, 540–42 (1986). The rationale is that while the common experience of jurors enables them to assess the credibility of alleged assault victims generally, the unique pressures surrounding a child victim, and their concomitant effects on the child's behavior, are such that an expert's testimony is deemed useful in assisting the jurors' assessment of the child's credibility. *State v. Middleton,* 294 Or. 427, 440, 657 P.2d 1215, 1222 (1983) (Roberts, J., concurring). The expert's testimony about the general behavioral traits of child victims— *e.g.,* delay in reporting the incident, recantation, truancy, embarrassment, running away from home, and inconsistent versions of abuse—explains to the jurors that such

2. The Texas Rules of Criminal Evidence became effective on September 1, 1986, before appellant's trial commenced on October 15, 1986. These Rules will be referred to as "Rule ___" throughout this opinion.

3. There is a split of authority among the jurisdictions considering the admissibility of opinion testimony on the truthfulness of a child complainant. *Compare State v. Lindsey,* 149 Ariz. 472, 474–475, 720 P.2d 73, 75–76 (1986); *Kruse v. State,* 483 So.2d 1383, 1287–88 (Fla.App.1986); *State v. Myers,* 382 N.W.2d 91, 97 (Iowa 1986); *People v. Parks,* 41 N.Y.2d 36, 48, 390 N.Y.S.2d 848, 858, 359 N.E.2d 358, 367 (1976) (dictum) and *State v. Middleton,* 294 Or. 427, 437, 657

P.2d 1215, 1221 (1983) *with State v. Geyman,* 729 P.2d 475, 479 (Mont.1986) and *State v. Kim,* 64 Hawaii 598, 645 P.2d 1330, 1338–39 (1982).

Of the decisions reaching a conclusion opposite to the one reached herein, *Kim* is, by all means, the most far reaching in that (1) *Kim* involved a thirteen-year-old complainant, approaching the fourteenth birthday where the common-law presumption of ability to testify as an adult would apply, and (2) *Kim* not only held that expert testimony inferentially supporting the truthfulness of the complainant's testimony was admissible; it approved direct expert opinion of truthfulness.

behavior, which might otherwise be attributed to inaccuracy or falsification, is typical of the class of victims and does not necessarily indicate a lack of credibility. Thus, such testimony, which allows the jury to assess the credibility of a particular complainant more fairly by explaining the emotional antecedents underlying the typical victim's behavior, meets the requirements of Rule 702. *See Rose v. State,* 716 S.W.2d 162, 168 (Tex.App.—Dallas 1986, no pet.) (citing *Holloway v. State,* 613 S.W.2d 497 (Tex.Crim.App.1981)) (expert opinion evidence admissible when jurors' unfamiliarity with a body of relevant expertise renders them incompetent to infer the existence of facts to be determined from other facts actually proved without the aid of greater skill than their own); *cf. Chambers,* 568 S.W.2d at 325–26 (psychiatric testimony describing the typical traits of a sociopathic personality held admissible). Further, we conclude that, although the receipt of evidence of the *general behavioral characteristics* of child victims *as a class* will usually benefit the State's case, it will not *unfairly* prejudice the defendant. Indeed, without such testimony, the defendant might maintain an unfair advantage.

However, after the jurors have become familiarized with the typical behavioral traits of the class, there is no need for further expert testimony, through which the expert expresses, *either directly or indirectly,* her opinion as to the credibility of a particular child complainant. It is well settled that a witness may not give an opinion as to the truth or falsity of other testimony. *Ayala v. State,* 171 Tex.Crim. 687, 689, 352 S.W.2d 955, 956 (1962) (cited in *Black v. State,* 634 S.W.2d 356 (Tex.App. —Dallas 1982, no pet.)); *accord United States v. Azure,* 801 F.2d 336, 339 (8th Cir.1986) (Rule 702 precludes admission of expert testimony that alleged child victim is "believable").

The need for expert testimony in child sexual abuse cases is limited to information that explains the aspects of a child

victim's behavior that are beyond the jurors' common experience, and thus permits the jury more properly to draw inferences and conclusions from other evidence. Once the jurors possess the same enlightening information as the expert witness, and can more fully understand the matter at hand, further expert testimony is unnecessary and inadmissible. *Steve,* 614 S.W.2d at 139. A psychiatric or psychological expert must not be permitted, even implicitly, to advise the jury as to which witness is more credible, especially in cases lacking physical evidence or eyewitnesses, where the resolution of the pivotal issues entirely depends on the complainant's credibility. In the case in hand, as is typical of child molestation cases, there was no evidence outside the child complainant's testimony that a crime even occurred.

Of course, Rule 704 authorizes opinion testimony that embraces an ultimate issue to be decided by the trier of fact. However, such opinion testimony must be "otherwise admissible," and the opinion of one witness as to the veracity of another's testimony is not "otherwise admissible." *Cf. Ayala,* 171 Tex.Crim. at 689, 352 S.W.2d at 956. Rule 704, in and of itself, cannot be construed as authority permitting an expert to tell the jury whom the expert considers that the jury should believe. *Moran,* 151 Ariz. at 383, 728 P.2d at 253 (citing FED.R.EVID. 704 advisory committee note, *reprinted in* 56 F.R.D. 183, 284 (1973)). When the only evidence consists of the conflicting accounts of the defendant and the complainant, expert testimony advising the jurors who is more credible may not be admitted,[4] even when the expert's opinion as to the alleged victim's credibility is merely implied or indirect. *See, e.g., Moran,* 151 Ariz. at 385, 728 P.2d at 255 (expert testimony that results of personality tests performed on alleged victim were consistent with those of an individual who had *in fact* experienced trauma "like a molest[ation]" held inadmissible); *State v. Myers,* 382 N.W.2d 91, 97 (Iowa

---

4. *See Hopkins,* 480 S.W.2d at 219, and cases cited therein (expert testimony has been held inadmissible when the jury is as qualified as the expert to form an opinion, based on the facts in evidence).

1986) (improper to admit expert testimony that children rarely lie about sexual abuse).

There are two reasons why such testimony must be excluded. First, after the expert explains the classic behavior of child victims, the jurors are as qualified as the expert to draw inferences as to credibility, based on the other evidence in the case. Thus, any expert opinion regarding credibility is superfluous. *Hopkins*, 480 S.W.2d at 218. Second, psychiatrists and psychologists, who are trained to accept their patients' word as fact, are not necessarily experts at verifying credibility. There is no acid test for veracity. *Cf. Crawford v. State*, 617 S.W.2d 925, 930 (Tex.Crim.App. 1980), *cert. denied*, 452 U.S. 931, 101 S.Ct. 3067, 69 L.Ed.2d 431 (1981) (results of polygraph examinations, by virtue of their unproven reliability, are inadmissible for any purpose) [5]; *see also Azure*, 801 F.2d at 341 ("no reliable test for truthfulness exists"). Thus, the use of expert testimony must be limited to providing knowledge that will assist the jury's rational decision of the issues before it; it cannot be used to advise the jurors who is telling the truth.

■ We now apply these principles to the facts of our case. In points five and seven, appellant contends that the trial court erred in permitting the following exchanges between the prosecutor and the two psychological experts, Wanda White and Sue James:

> PROSECUTION: Do you feel ... that [the complainant] would be able to fool you so that you would be mistaken in your evaluation of her story?
>
> DEFENSE: Your Honor, we'll object. This question goes to the veracity and truthfulness of the child again.
>
> THE COURT: No, overruled.
>
> WITNESS WHITE: No, I don't think she could fool me....
>
> PROSECUTOR: Do you feel ... that your training qualifies to you [sic] make a determination whether or not [the complainant's] story is a product of her imagination?
>
> DEFENSE: Your Honor, we'll object. This goes to the truthfulness and veracity of the [complainant]. It invades the province of the jury.
>
> THE COURT: Overrule you.
>
> WITNESS WHITE: I don't think it has anything to do with her imagination.
>
> .   .   .   .   .
>
> PROSECUTION: And you feel like you're qualified to ferret out those cases where [the alleged incident of abuse] is something [the alleged victims] invented out of thin air or whether it actually happened?
>
> WITNESS WHITE: Yes, I do.
>
> *   *   *   *   *   *
>
> PROSECUTION: Do you feel ... that you would be able to make a determination, based on your contact with this case and viewing the video tape [of the alleged victim recounting her version of the facts], whether or not the complainant is telling this story out of some figment of her imagination?
>
> WITNESS JAMES: I can make that determination.
>
> DEFENSE: Your Honor, I'll object to the question as being invasive of the province of the jury. It goes to the ultimate facts and circumstances.
>
> *   *   *   *   *   *
>
> THE COURT: I'm going to overrule your objection.
>
> PROSECUTION: In your opinion, is what [the complainant] is telling you a figment—Is she telling a story that is invented in her own mind, a figment of her imagination?
>
> WITNESS JAMES: No, she is telling an experience that she actually had.

The obvious purpose of this testimony was to convey to the jury that the two psychologists were experts in discerning veracity. Rule 702 precludes the admission of such testimony for two reasons. First,

---

**5.** An expert who gives his opinion as to the credibility of a witness is, by any available measure, the human equivalent of a polygraph machine. The overwhelming majority of American jurisdictions reject polygraph results as evidence. Expert testimony of truthfulness should be excluded on the same grounds.

no expert witness is qualified to ascertain credibility; thus, such opinion testimony as that quoted above is outside the scope of *any* witness' expertise. Second, the determination of credibility is vested in the exclusive province of the jury, *Johnson v. State,* 503 S.W.2d 788, 793 (Tex.Crim.App. 1974), and jurors are not so unfamiliar with deciding when someone is being truthful that they require "expert" assistance to perform their duty, especially when the experts' testimony concerning child victims' typical behavioral characteristics has dispelled any misconceptions that might otherwise cloud or distort the jurors' evaluation of the evidence. Accordingly, we hold that the experts' testimony that attempted to establish their expertise in discerning the complainant's veracity was improperly admitted. Points five and seven are sustained.

■ In point of error six, appellant asserts that the trial court erred in permitting the following testimony by psychologist White:

PROSECUTION: In your opinion, has [the complainant] been sexually abused?
DEFENSE: Your Honor, we'll object. This question again invades the province of the jury. That's their—These twelve people have the obligation to decide whether the [complainant's] allegation is true....
THE COURT: I'm going to overrule you on that. She can answer.
WITNESS WHITE: Yes, [the complainant] was abused, in my opinion.

The only issue in this case was whether the complainant's allegation of sexual abuse was true. The necessary inference from the expert's testimony, "[y]es, [the complainant] was abused," was that the expert believed that the complainant's version was true and that she had indeed been sexually abused. We hold that such testimony was an improper comment on the complainant's credibility and was therefore, erroneously admitted. *See Black,* 634 S.W.2d at 357–58. Point six is sustained.

■ In points three and four, appellant complains of the trial court's admission of the following testimony:

PROSECUTION: Does [the complainant] exhibit classic characteristics that you have seen, in your experience, of a child who *has been* sexually abused?
DEFENSE: Your Honor, we renew the objection on the ... basis [that such testimony would invade the province of the jury].
THE COURT: I'm going to allow that one. Overruled.

\* \* \* \* \* \*

WITNESS WHITE: Yes, she does.

\* \* \* \* \* \*

PROSECUTION: [I]n [the complainant's] case, does she exhibit the same characteristics as you have seen in other *cases where you have found that the claim was true?*

\* \* \* \* \* \*

WITNESS WHITE: Yes.

(Emphasis added.) This testimony, which directly compared the complainant's behavioral characteristics with those exhibited by *verified* child victims as a class, did not ask for a point blank opinion on the complainant's credibility as did the testimony discussed under points five, six, and seven. However, the inference which the expert offered the jury was that because the complainant's behavior was consistent with that of victims of proven credibility, the complainant must be telling the truth and the alleged sexual abuse must have occurred. Once the jurors were familiarized with the typical behavior of actual victims, the expert had given the jury all the expertise that it needed to perform its function. From that point forward, it was as capable as the expert to determine the consistency (or lack of it) of the complainant's behavior by correlating evidence concerning the complainant's post-incident behavior with the classic behavior pattern described by the expert.

Of course, the expert was free to detail her personal observations of the complainant's behavior, as may other lay witnesses; however, it was the jury's exclusive role to assess the complainant's credibility by drawing comparisons between the behavior

of the complainant and of others similarly situated. *See Moran,* 151 Ariz. at 385, 728 P.2d at 255 ("the matching" of testimony improperly permits the expert to indicate how she views the credibility of a particular witness). The testimony challenged under these points did not assist the jury in understanding the evidence or in determining a fact in issue. *See* TEX.R.CRIM. EVID. 702. Accordingly, we hold that the trial court erred in admitting this testimony. Points three and four are sustained.

In summary, we point out that the rule precluding a witness, particularly an expert witness, from testifying with respect to an ultimate issue was with us for many years, perhaps generations. The rule has properly been discarded as too mechanical, too arbitrary. However, we must recognize that the rule was based on certain wisdoms, else it would not have persisted near so long. One of its wisdoms is the broad principle that expert witnesses should not be permitted to give opinions as to the credibility of fact witnesses. *See Hopkins,* 480 S.W.2d at 220–21. If such be permitted without limitation, we can envision the day when each party would be calling experts to posit their opinions that the witnesses for the other side are not credible and the witnesses for the side with whom the expert is aligned are extremely believable. Suffice to say, the entire concept of trial by jury could be drastically altered if this practice were allowed to grow unchecked. Among the other problems that we can foresee are the problems of those litigants without the funds necessary to compensate those practitioners of the testifying acts who would be filling this envisioned new field of expertise.

It is not necessary for us to hold that an expert may never be allowed to give an opinion, either directly or indirectly, that a witness is or is not credible, that a witness' testimony on a particular point is or is not believable. We do hold that such area is to be jealously guarded. We further hold that the expert testimony proffered in this case was inadmissible.[6]

Accordingly, the trial court's judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

6. The State contends that earlier testimony as to the truthfulness of the child complainant had been elicited without objection. Citing *Brasfield v. State,* 600 S.W.2d 288, 296 (Tex.Crim.App. 1980), the State argues that evidence improperly admitted is not reversible if the same facts were elsewhere placed in evidence without objection. The record reflects that the State opened the area of inquiry addressed to its two experts as follows:

Q: [Prosecution] Okay. In this particular case involving ... [child complainant], during the three times that she has talked to you, what sorts of things did you look for in your interviews with her that led to your conclusion whether her claim was true or not?
A. I looked at the consistency of her story, the details that were involved and what was going on when—at the time that this was supposed, you know, to have happened. I looked at the trauma that was in the child, how she behaved when she was talking about it, how upset she was or—and things like that.
Q. Are those things that you have mentioned or that you observed on counseling with ... [child complainant] and hearing her story, watching her reaction, are those things all consistent, based on your training and experience, with children who have in fact been sexually abused?

A. Yes, they are.
No objection was lodged at this point. The State proceeded to ask for the expert's opinion "whether or not she is truthful about her claim of sexual abuse." Thereupon, the defense objected and proceeded to lodge as many as ten objections to the State's further attempts to produce expert testimony as to the believability of the child complainant. Appellant does not base his appeal on the quoted testimony. Obviously he could not do so because there was no timely objection. However, *Brasfield* does not furnish authority to reject the objected error as grounds for reversal.
Properly stated, the rule is that no reversal may be based upon the erroneous admission of evidence that is *"merely cumulative." Id.* at 296 [emphasis added]. Thus, when the same or substantially the same evidence is presented two or more times during the course of a trial and the evidence is adduced without objection at least one time, the rule may preclude reversal based upon the time or times that the same evidence was admitted over objection.
Our examination of the record reflects that the unobjected inquiry was merely the opening salvo of an extended line of inquiry. The inquiries as to which appellant made proper objection cannot be dismissed as "merely cumulative." The errors asserted by appellant were preserved and we find them reversible.

THOMAS, Justice, concurring.

I agree that an expert witness' testimony that a child witness is telling the truth is inadmissible. I cannot join, however, in the majority's decision to exclude testimony from an expert that the complainant has been abused or that the complainant exhibits the same behavioral characteristics as those exhibited by sexually abused children. Although the majority recognizes that expert testimony is not inadmissible on the ground that it invades the province of the jury, it harks back to that rule to prohibit the expert's testimony in this case.

In appellant's fifth and seventh points of error, he complains of the witness' statements that the complainant is telling an experience she actually had rather than imagining the incident. The majority sustains the points of error for two reasons. First, credibility of witnesses is solely within the province of the jury. Second, no person can be qualified as an expert in discerning veracity. I do not dispute that the determination of credibility is vested in the jury. *Bonham v. State*, 680 S.W.2d 815 (Tex.Crim.App.1984), *cert. denied*, 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985). However, I cannot agree that this is a reason to prohibit such testimony. The law is clear that an expert's testimony is not inadmissible solely because it invades the province of the jury. *Hopkins v. State*, 480 S.W.2d 212, 218–19 (Tex.Crim.App. 1972); TEX.R.CRIM.EVID. 704.

I agree with the majority's second rationale. The expert's opinion on truth and credibility of the witness is inadmissible because the opinion exceeds the scope of the witness' expertise. The foremost criterion for the admissibility of an expert's testimony is that he is competent and qualified to testify on the matter. *Chambers v. State*, 568 S.W.2d 313 (Tex.Crim.App.1978), *cert. denied*, 440 U.S. 928, 99 S.Ct. 1264, 59 L.Ed.2d 484 (1979), *set aside on other grounds, Ex parte Chambers*, 688 S.W.2d 483 (Tex.Crim.App.1984), *cert. denied*, 474 U.S. 864, 106 S.Ct. 181, 88 L.Ed.2d 150 (1985); *Hopkins*, 480 S.W.2d at 219. The State has, understandably, failed to meet its burden to establish the witness' qualifi-

cations in the area of truthseeking. *No* expert witness is qualified to ascertain credibility. For this reason, I join the majority in sustaining points of error five and seven.

In points of error three and four, appellant contends that the following testimony was improperly admitted:

PROSECUTION: Does [the complainant] exhibit classic characteristics that you have seen, in your experience, of a child who has been sexually abused?

DEFENSE: Your Honor, we renew the objection on the ... basis [that such testimony would invade the province of the jury].

THE COURT: I'm going to allow that one. Overruled.

\*     \*     \*     \*     \*     \*

PROSECUTION: [I]n [the complainant's] case, does she exhibit the same characteristics as you have seen in other cases where you have found that the claim was true?

\*     \*     \*     \*     \*     \*

WITNESS WHITE: Yes.

In point of error six, appellant complains of the following testimony:

PROSECUTION: In your opinion, has [the complainant] been sexually abused?

DEFENSE: Your Honor, we'll object. This question again invades the province of the jury. That's their—These twelve people have the obligation to decide whether the [complainant's] allegation is true....

THE COURT: I'm going to overrule you on that. She can answer.

WITNESS WHITE: Yes, [the complainant] was abused, in my opinion.

The majority holds that both of the recited colloquies were inadmissible. Again, the majority gives two reasons for its opinion. First, the testimony invades the province of the jury; and second, the testimony allows the jury to infer that the complainant is telling the truth.

Again, I must point out that "invading the province of the jury" is no longer a valid reason for excluding testimony. TEX.R.CRIM.EVID. 704. The majority re-

fines this argument somewhat. According to the majority—and I do not dispute it—the expert could properly testify as to the general behavioral characteristics of child sexual abuse victims as a class. The expert could also recite her personal observations of the complainant's behavior. The majority holds that the error lies in the expert's synthesizing this information to opine that the complainant exhibits the characteristics common to sexually abused children, leading to the expert's conclusion that the child has been abused. I cannot agree with this analysis.

The majority acknowledges that the jury could properly draw a comparison between the behavior of the complainant and the behavior of abused children to conclude that the complainant was abused. The United States Supreme Court has said, "If the jury may make up its mind about future dangerousness unaided by psychiatric testimony, jurors should not be barred from hearing the views of the State's psychiatrists along with opposing views of the defendant's doctors." *Barefoot v. Estelle*, 463 U.S. 880, 898–99, 103 S.Ct. 3383, 3397, 77 L.Ed.2d 1090 (1983). Thus, the fact that the jury is able to synthesize evidence unaided by the expert does not serve as grounds for excluding the expert's testimony.

Further, in allowing psychiatric opinion testimony, the Court of Criminal Appeals has analogized to the opinion testimony of a fingerprint expert:

> To hold that a fingerprint expert may testify only as to the facts (which are themselves, in reality, opinions), namely, that one set of fingerprints exhibits the same technical characteristics as another set, but that he may not state his opinion that the two sets were the same, or that they were made by the same person would indeed be an absurdity. Such a holding would mean that he could testify only that certain patterns in one set were identical with those in the other set, but could not opine that both sets were the same, or that the defendant's fingerprints were the same as those in the records. Yet if the invasion of the province of the jury rule is followed, such a

result would clearly be required, for his opinion that the sets were the same would be an opinion regarding an ultimate issue.

*Hopkins*, 480 S.W.2d at 220. Under the majority's holding, the fingerprint expert would again be limited to testimony of technical characteristics without expressing an opinion. *Hopkins* will not allow such a result.

The second, and principal, reason the majority finds the expert's testimony in this case offensive appears to be that the jury could infer from the expert's testimony that the complainant is telling the truth, or that the witness believes the complainant. It is true that if the jurors believed the expert's testimony they would be more likely to believe the victim's account. The evidence should not be excluded purely for that reason. Much expert—and lay—testimony will tend to show that another witness either is or is not telling the truth.

For example, a fingerprint expert's testimony that the defendant's fingerprints match those found on the murder weapon will tend to make unbelievable the defendant's averments that he had never seen the gun before. A physician's opinion that injuries to a child were the result of a beating casts doubts on the veracity of a defendant who claims the child was injured falling out of bed. A police officer's statement that, in his opinion, the defendant was intoxicated appears to make untruthful the driver's testimony that he only had one beer. An expert's testimony that a fire was of an incendiary origin would tend to impinge upon the veracity of a defendant's claim of natural causes. Yet, such testimony is admissible in a criminal prosecution. *Miller v. State*, 472 S.W.2d 269 (Tex.Crim. App.1971) (fingerprint evidence); *Austin v. State*, 375 S.W.2d 308 (Tex.Crim.App.1964) (medical testimony as to cause of death); *Smithhart v. State*, 503 S.W.2d 283 (Tex. Crim.App.1973) (intoxication opinion evidence); *Burrow v. State*, 481 S.W.2d 895 (Tex.Crim.App.1972) (opinion as to cause of fire).

I would hold that the expert witness' testimony that the complainant exhibits behavioral characteristics common to sexually abused children and that, in her opinion, the child has been sexually abused, was admissible. Consequently, I would overrule points of error three, four and six.

Having sustained appellant's fifth and seventh points of error, holding that certain testimony was erroneously admitted, I must determine whether such error requires us to reverse appellant's conviction. Rule 81 of the Rules of Appellate Procedure mandates that "the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment." TEX.R.APP.P. 81(b)(2). *See also Green v. State,* 727 S.W.2d 263, 267 (Tex.Crim.App.1987). The admission of improper evidence puts the burden on the State to prove beyond a reasonable doubt that the error did not contribute to the conviction. *Foster v. State,* 687 S.W.2d 65, 66 (Tex.App.—Dallas 1985, pet. ref'd).

To determine whether the evidence contributed to the conviction, I ask whether the "minds of an average jury" would have found the State's case less persuasive had the testimony been excluded. *Bird v. State,* 692 S.W.2d 65, 70 (Tex.Crim.App. 1985), *cert. denied,* 475 U.S. 1031, 106 S.Ct. 1238, 89 L.Ed.2d 346 (1986) (citing *Schneble v. Florida,* 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972)). *See also Beck v. State,* 712 S.W.2d 745, 748–49 (Tex.Crim. App.1986); *Ranson v. State,* 707 S.W.2d 96, 100 (Tex.Crim.App.1986). In this case, the State's proof consisted of the complainant's testimony and her outcry statement to her mother. Appellant testified, denying that he touched the complainant in an improper manner. Thus, the primary issue facing the jury was the credibility of the complainant and of appellant. There was no physical evidence that the incident occurred and no eye witness. The eight-year-old complainant's testimony was significantly bolstered by the expert witness' statement that she believed the complainant was telling the truth. I would hold that the average jury would have found the State's case less persuasive in the absence of the expert's testimony. Thus, I concur in the reversal of the judgment.