TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







ON MOTION FOR REHEARING









NO. 03-97-00224-CR






Eric Vasquez, Appellant




v.




The State of Texas, Appellee







FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT


NO. 8607, HONORABLE HAROLD TOWSLEE, JUDGE PRESIDING





 A jury found appellant guilty of sexual assault and assessed punishment at imprisonment
for ten years. See Tex. Penal Code Ann. § 22.011(a)(2)(D) (West Supp. 1998). In his only point of
error, appellant contends the district court erroneously permitted the State to adduce expert testimony that
the complaining witness's accusations were truthful. (1) In our opinion on original submission, we overruled
the point of error on the ground that appellant voiced no contemporaneous objection to the allegedly
improper testimony. In his motion for rehearing, appellant for the first time refers us to that portion of the
reporter's record at which pertinent objections were made and overruled. Finding that the point of error
was preserved, we withdraw our original opinion and judgment. Because we conclude that the district
court did not err by admitting the testimony, we will overrule the motion for rehearing and again affirm the
judgment of conviction.

 The relevant background facts may be briefly stated. Appellant is the complainant's
stepfather. Appellant and the complainant's mother were divorced when the complainant was five years
old, and thereafter appellant moved alone to California. In 1992, when the complainant was twelve, his
mother was killed in an automobile accident. Appellant assumed custody of the complainant and his two
younger sisters (appellant's daughters), taking them to live in California for about one year before returning
to Texas. In April 1996, when he was sixteen years old, the complainant told his high school counselor
that he was being physically abused at home. During a subsequent interview by a child protective services
worker, the complainant made his outcry regarding sexual abuse. In his statements to interviewers and in
his trial testimony, the complainant described repeated episodes of sexual activity during which appellant
would cause the complainant's penis to penetrate appellant's anus.

 The witness whose testimony is at issue was Dr. Cecil Reynolds, a psychologist on the
faculty at Texas A&M University. Reynolds conducted a psychological evaluation of the complaining
witness. This evaluation included a procedure called statement validity assessment. Reynolds explained
the procedure as follows:

The statement validity assessment is a process that we go through when we engage
in an analysis of what a child has told us in the form of a written transcript to determine
whether or not that statement contains certain characteristics that have been shown in
research since the 1950's that are present in accounts of real events, versus accounts of
events that may be delusional, hallucinatory or just fabricated. The hypothesis is that of
things that you have actually experienced in your life, when you describe them you describe
them differently than things that you have never experienced, that there are certain elements
of that description, certain details of that description that appear if you have really
experienced it versus if you have not.



Reynolds testified that statement validity assessment is generally accepted and widely used in the
psychological community and that at least two studies have found it to be "near to one hundred percent
accurate." Reynolds stated that statement validity assessment is used in therapeutic settings "to determine
whether or not in fact a child had been abused or if there were other problems that were causing them to
present to you that they had been abused." (2)

With respect to the complainant, Reynolds testified that "there were concerns expressed
. . . not only about his emotional state but whether or not he had in fact been sexually assaulted. He had
made an outcry about that and there were some concerns expressed to me about whether or not that had
happened." After relating the complainant's statement to him describing the alleged assaults, Reynolds
analyzed it for the jury:


Some of the things are that he's given me a logical structure for this story, so he's
provided that had [sic] already. It just flows in some sense. And he's included some
things that are kind of relevant, like he said, "well, me and my sisters and [appellant] had
come home from school and we watched TV for a while." That's something you look for
when people have actually experienced something. So he placed it into a context. He
described something that is logical and possible. He has described some things that
typically at his age would not be unheard of for him to know but describing the process of
[appellant] putting jelly on him before he penetrated him is something that at his age is
something a little more unusual.


. . . 


Then he goes on and he tells about something that didn't happen, which is another
characteristic that he didn't make up. He's anxious for me to know, because he said he
never intruded [sic] me. So that is of significance as well.[ (3)]



Reynolds indicated that it would be "very adverse" to a teenaged boy's normal mental state to "make up
a story" involving repeated homosexual experiences. Reynolds added that the complainant exhibited
several symptoms consistent with sexual abuse: guilt, restricted affect, hypervigilance, flashbacks and
"thought intrusion," dissociation from his feelings, and conduct problems.

Expert testimony that a child exhibits behavioral characteristics that have been empirically
shown to be common among children who have been sexually abused is relevant and admissible as
substantive evidence under rule 702. Yount v. State, 872 S.W.2d 706, 709 (Tex. Crim. App. 1993); Tex.
R. Evid. 702. (4) See also Cohn v. State, 849 S.W.2d 817, 819-21 (Tex. Crim. App. 1993) (such
testimony not objectionable as "bolstering"). On the other hand, an expert witness may not testify directly
that a particular witness is truthful, or that a class of persons to which the witness belongs is truthful. Yount,
872 S.W.2d at 711. Reynolds's testimony that the complainant exhibited symptoms consistent with sexual
abuse was clearly admissible under the authority of Yount and Cohn, and appellant does not argue
otherwise. Appellant contends, however, that Reynolds's testimony regarding the statement validity
analysis of the complainant's outcry violated Yount because it constituted direct testimony that the
complainant's accusations were true.

Our disposition of this contention is controlled by Schutz v. State, 957 S.W.2d 52 (Tex.
Crim. App. 1997). In that case involving the aggravated sexual assault of a six-year-old girl, a social
worker and a psychologist testified as to whether the girl's accusations were the product of manipulation
or fantasy. The Court of Criminal Appeals held that evidence that a person's recitation of events is or is
not the product of manipulation or fantasy is, in effect, particularized testimony concerning the person's
credibility. Id. at 69. The court continued:


[E]vidence of manipulation and fantasy, whether relating to mental capacity or moral
disposition [to tell the truth], should be analyzed under the same rules that govern evidence
of truthful or untruthful character. Under Rule 608(a), a party may attack a witness' or
other declarant's general capacity or disposition to tell the truth. The other party may
respond to such an attack with evidence supporting that persons's general capacity or
disposition for truthfulness. . . . General capacity evidence includes whether a person can
distinguish between reality and fantasy and/or whether the person's physical or mental
condition adversely affects a persons's ability to accurately perceive and/or relate events.
. . .


Likewise, a party may attack the credibility of a witness or other declarant by
offering the following kinds of manipulation evidence: (a) evidence that the person is, in
general, the kind of person who is easily manipulated, (b) common signs or symptoms of
manipulation and evidence that the person displays some or all of these signs or symptoms,
and (c) evidence of third person acts or words designed to manipulate. The other party
may respond to such attacks with (a) evidence that the person is not, in general, the kind
of person who is easily manipulated, (b) common signs or symptoms of manipulation and
evidence that the person does not display these signs or symptoms of manipulation, and
(c) evidence rebutting the existence of third person acts or words of manipulation. . . .


. . .


However, evidence that a persons's allegations are the result of manipulation or
fantasy is inadmissible. Such evidence never assists the jury because the jury is just as
capable as the expert of drawing the conclusions involved.



Id. at 69-71 (footnotes omitted). Schutz then created an exception to the rule prohibiting direct testimony
that an accusation is not the result of manipulation or fantasy: a party may offer such evidence in response
to evidence directly attacking the accusation on the same basis. Id. at 71-72. In this regard, the court
added:


[I]t [is] important to distinguish proper rebuttal testimony under Rule 608(a) and comments
on credibility that fall outside of that provision. Although some minimal relevance is
required, general evidence supporting truthful character as outlined by Rule 606(a) may
be liberally employed to respond to attacks on truthful character: there need only be a
"loose fit" between the rebuttal evidence and the predicate attacks on character. . . . But,
evidence that falls outside the recognized rebuttal category in Rule 608(a) is illegitimate and
a much more specific showing of relevance must be shown: there must be a "tight fit"
between the rebuttal evidence and the predicate attacks on character.



Id. at 72; and see id. at 75-76 (appendix to opinion).

In Schutz, the court concluded that the social worker's testimony that the child did not
exhibit the traits of manipulation was not a direct comment on the truth of her allegations and was properly
admitted. Id. at 73. On the other hand, the social worker's testimony that she found no evidence that the
child was fantasizing, and the psychologist's testimony that, in his opinion, the child had not been
manipulated and her statements were not the result of fantasy, were direct comments on the child's
truthfulness and should not have been admitted. Id.

We believe that statement validity analysis testimony is comparable to the manipulation and
fantasy testimony at issue in Schutz. Testimony that an analysis of a person's statement indicates that the
person did or did not actually experience the facts related in the statement constitutes particularized
testimony concerning the person's credibility. Under the framework set forth in Schutz, general testimony
to the effect that a person's statement contains characteristics that are commonly present in accounts of
real events is admissible to rebut attacks on the statement's credibility, provided there is a loose fit between
the rebuttal testimony and the predicate attacks. Id. at 72 and appendix at 76. Specific testimony that
statement validity analysis indicates that the person's statement is in fact an account of real events is usually
inadmissible, and may be adduced only to rebut specific testimony that such analysis indicates that the
statement is not an account of real events. Id.

We now apply this analysis to Reynolds's testimony. Reynolds testified that the
complainant's statement had a logical structure and context, "something you look for when people have
actually experienced something." He also noted that the complainant "tells about something that didn't
happen," which is another characteristic of statements that are not fabricated. Finally, Reynolds indicated
that it would be "very adverse" to a teenaged boy's normal mental state to fabricate a story involving
repeated homosexual experiences. In effect, Reynolds testified that the complainant's statement had
characteristics commonly found in descriptions of actual events. Such general support for the complainant's
credibility was admissible under Schutz to rebut appellant's defensive theory, first articulated during defense
counsel's opening statement and later pursued during counsel's cross-examination of the various witnesses,
that the complainant had falsely accused appellant of sexual misconduct because he resented appellant's
strict discipline and wanted to live with his grandparents.

Reynolds's testimony is distinguishable from the testimony at issue in Kirkpatrick v. State,
747 S.W.2d 833 (Tex. App.--Dallas 1987, pet. ref'd), cited by appellant. In that case, two psychologists
each testified that her training and experience qualified her to determine whether a child's outcry statement
was true or imaginary, and that in her opinion the child was relating an actual experience, not an imaginary
one. This was direct testimony that the child was telling the truth, and was inadmissible under Schutz
analysis absent similar expert testimony directly attacking the child's credibility.

We note that Reynolds testified outside the jury's presence that "the statement validity
assessment indicates a very high probability that the events [the complainant] described were in fact within
his experience." We understand the district court to have overruled appellant's objection to this testimony. 
That ruling was erroneous. Had this testimony been adduced before the jury, it would have constituted
direct testimony that the complainant's statement was true, comparable to that deemed inadmissible in
Schutz and Kirkpatrick. While appellant's general attack on the complainant's credibility authorized the
State to respond with Reynolds's testimony that the complainant's statement had characteristics commonly
found in descriptions of actual events, it did not open the door to Reynolds's conclusion that the
complainant's statement was in fact true.

For the reasons stated, we hold that Reynolds's testimony before the jury generally
supporting the complainant's credibility was properly admitted to rebut appellant's general attack on the
complainant's credibility. The point of error is overruled.

The motion for rehearing is overruled and the judgment of conviction is affirmed.



 

 Marilyn Aboussie, Justice

Before Justices Powers, Aboussie and B. A. Smith

Affirmed

Filed: August 31, 1998

Publish

1. Appellant's point of error characterizes the alleged error as improper "bolstering" of the complainant. 
We have restated the point to more accurately reflect the substance of appellant's contention. As to the
continued validity of a bolstering objection, see Cohn v. State, 849 S.W.2d 817, 819-21 (Tex. Crim.
App. 1993). 
2. Appellant does not question the reliability of statement validity assessment. See Kelly v. State, 824
S.W.2d 568, 573 (Tex. Crim. App. 1992); Nations v. State, 944 S.W.2d 795, 797 (Tex. App.--Austin
1997, pet. ref'd). See also Nenno v. State, No. 72,313 (Tex. Crim. App. June 24, 1998) (applying Kelly
to nonscientific expert testimony).
3. Reynolds testified that he understood "intruded," as used by the complainant, to mean "penetrated."
4. Present rule 702 is identical to Texas Rule of Criminal Evidence 702 at issue in Yount and in effect
at the time of appellant's trial.


>We now apply this analysis to Reynolds's testimony. Reynolds testified that the
complainant's statement had a logical structure and context, "something you look for when people have
actually experienced something." He also noted that the complainant "tells about something that didn't
happen," which is another characteristic of statements that are not fabricated. Finally, Reynolds indicated
that it would be "very adverse" to a teenaged boy's normal mental state to fabricate a story involving
repeated homosexual experiences. In effect, Reynolds testified that the complainant's statement had
characteristics commonly found in descriptions of actual events. Such general support for the complainant's
credibility was admissible under Schutz to rebut appellant's defensive theory, first articulated during defense
counsel's opening statement and later pursued during counsel's cross-examination of the various witnesses,
that the complainant had falsely accused appellant of sexual misconduct because he resented appellant's
strict discipline and wanted to live with his grandparents.

Reynolds's testimony is distinguishable from the testimony at issue in Kirkpatrick v. State,
747 S.W.2d 833 (Tex. App.--Dallas 1987, pet. ref'd), cited by appellant. In that case, two psychologists
each testified that her training and experience qualified her to determine whether a child's outcry statement
was true or imaginary, and that in her opinion the child was relating an actual experience, not an imaginary
one. This was direct testimony that the child was telling the truth, and was inadmissible under Schutz
analysis absent similar expert testimony directly attacking the child's credibility.

We note that Reynolds testified outside the jury's presence that "the statement validity
assessment indicates a very high probability that the events [the complainant] described were in fact within
his experience." We understand the district court to have overruled appellant's objection to this testimony. 
That ruling was erroneous. Had this testimony been adduced before the jury, it would have constituted
direct testimony that the complainant's statement was true, comparable to that deemed inadmissible in
Schutz and Kirkpatrick. While appellant's general attack on the complainant's credibility authorized the
State to respond with Reynolds's testimony that the complainant's statement had characteristics commonly
found in descriptions of actual events, it did not open the door to Reynolds's conclusion that the
complainant's statement was in fact true.

For the reasons stated, we hold that Reynolds's testimony before the jury generally
supporting the complainant's credibility was properly admitted to rebut appellant's general attack on the
complainant's credibility. The point of error is overruled.

The motion for rehearing is overruled and the judgment of conviction is affirmed.



 

 Marilyn Aboussie, Justice

Before Justices Powers, Aboussie and B. A. Smith

Affirmed

Filed: August 31, 1998

Publish

1. Appellant's point of error characterizes the alleged error as improper "bolstering" of the complainant. 
We have restated the point to more accurately reflect the substance of appel