In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00082-CR
______________________________


MILTON ESCAMILLA, JR., Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 33rd Judicial District Court
Llano County, Texas
Trial Court No. CR5533


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Carter


MEMORANDUM OPINION

            Milton Escamilla, Jr., was found guilty by a jury of the offense of aggravated sexual assault
of a child. Escamilla elected to have the trial court assess punishment, which was set at thirty years'
confinement. Escamilla submits that the trial court erred in two instances: (1) in allowing two
witnesses to testify concerning "Child Abuse Accommodation Syndrome" and delayed outcry when
they had no expertise in the field; and (2) in refusing to delay the punishment phase of the trial to
allow a witness to be brought into the courtroom. 
              Escamilla does not challenge the sufficiency of the evidence. It was alleged that this sexual
assault occurred on or about May 9, 2004, over the Mother's Day weekend in a park in Llano County,
Texas.


 The child was twelve years old at the time and had known Escamillo since she was about
four years of age. The victim did not tell anyone about this until one week later when she told her
sister. 
Issue 1 — Did the trial court err in allowing witnesses to testify concerning the delayed outcry?

            Escamilla argues that two witnesses testified about findings made by a pediatric psychiatrist
regarding something he has termed "Child Abuse Accommodation Syndrome." Essentially,
Escamilla argues that witnesses Laurie Brock and Debbie Coats were improperly allowed to give
expert testimony regarding a subject about which they had no expertise. We will review testimony
of each of these witnesses.
            A.        Laurie Brock's Testimony
            Laurie Brock testified that she is an investigator for the Llano County Sheriff's Department
with a Bachelor of Science degree in criminal justice. She has worked for the Child Advocacy
Center for two years as a forensic interviewer interviewing children allegedly sexually assaulted. 
As the State began to question Brock regarding "delayed outcry," the defense attorney was allowed
voir dire examination concerning Brock's qualifications. The defense attorney then objected to
Brock's ability to testify as an expert witness. The court initially overruled the objection. After a
stipulation was entered, the defense attorney further objected to Brock testifying as an expert in
certain subjects, including the delayed outcry issue. After further discussion, the court reversed its
earlier ruling and limited Brock's testimony to her own experiences in investigating a sexual assault,
but said that it would not allow her to testify as to reasons or explanations for a delayed outcry
because, "I do not believe she is an expert on those so the Court would sustain the objection as to
that." Brock continued to testify and explained that the event occurred on May 9, 2004, and that it
was reported eight days later on May 17. She was then asked whether delayed outcry is expected
or uncommon. An objection was presented as follows: 
[Defense counsel]: Objection, predicate and witness incompetent to testify
to this issue. 

                        THE COURT: That's overruled. 
            The question was repeated as follows:
Q. . . . When you have a delayed outcry, -- when there's that time -- in
this case from May 9th to May 17th -- before a child tells someone, is that something
that's normal in your experience?
 
                        A         Yes, ma'am, that's normal. 
            That was the extent of Brock's testimony on the issue of delayed outcry.
            We do not believe that this involves expert testimony. The trial court limited Brock's
testimony to what she had seen in her own experience, and the actual question asked of her was
simply whether delayed outcry was normal in her experience. The testimony concerned only factual
matters that Brock had personally observed. Brock had several years of experience as a forensic
interviewer at a children's advocacy center and, therefore, had some basis on which to answer that,
in her experience, it was normal for children to delay reporting the crime of sexual assault. We do
not believe any error was committed by the trial court in allowing this testimony.
            B.        Debbie Coats' Testimony
            During the course of her testimony, Coats was asked if she was familiar with the term
"delayed outcry." She was asked to explain that term. At that time, an objection was made to the
predicate that "she hasn't been proved an expert in this field." The objection was overruled. Her
answer was: 
ASome of the children don't tell because of fear. Other children don't
tell because of other reasons, knowing and/or being told by a family member that it
will disrupt their whole family. Many times when kids tell, it does, their family
dynamics change, and children are often very scared about that.
 
QNow is that -- delayed outcry something that you would consider
normal or something you see often or is it rare? 
 
                                    A         This is very frequent with children. 

            Immediately after this testimony, Coats was asked if she was familiar with the term
"grooming." After answering that she was familiar with the term, she was asked to explain it, and
an objection was made and overruled as to relevance. Coats then went on to explain that, in her
training and experience, she has learned that "grooming" refers to a perpetrator gaining the trust of
a child; telling a child not to tell "our secret"; or that, if someone finds out, the child may be taken
away from his or her mother. Coats testified the effect of "grooming" is to keep the child quiet. 
Then Coats related that, in this case, there was a delay in the outcry for seven days. The only
objection concerning the "grooming" testimony was that it was irrelevant, not that it involved expert
testimony from a witness without sufficient authority to testify. 
            We review the trial court's decision to admit expert testimony for abuse of discretion. 
Alvarado v. State, 912 S.W.2d 199, 216 (Tex. Crim. App. 1995). The test for determining whether
an abuse of discretion occurred is not whether the facts present an appropriate case for the trial
court's action; rather, the test is whether the trial court acted without reference to any guiding rules
and principles, or in other words, acted in an arbitrary and unreasonable manner. Malone v. State,
163 S.W.3d 785 (Tex. App.—Texarkana 2005, pet. ref'd).
            Rule 702 of the Texas Rules of Evidence states if scientific, technical, or other specialized
knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a
witness qualified as an expert by knowledge, skill, experience, training, or education may testify
thereto in the form of an opinion or otherwise. Tex. R. Evid. 702. 
            Escamilla argues the trial court erred in admitting testimony "made by a pediatric psychiatrist
regarding something he has termed Child Abuse Accommodation Syndrome." He then argues that
such evidence is inadmissible based on Perez v. State, 25 S.W.3d 830 (Tex. App.—Houston [1st
Dist.] 2000, no pet.), and Kelly v. State, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992). We disagree
for several reasons.
            One primary reason for disagreeing with Escamilla's argument is that no witness in this case
testified concerning a psychiatrist's theory of Child Abuse Accommodation Syndrome. This
argument apparently emanates from Perez. In Perez, a witness, who had not seen the victim,
testified about her interpretation of the theories of Dr. Ronald Summit, a pediatric psychiatrist. The
witness testified that Dr. Summit, who also had never seen the victim, had written articles
concerning common reactions by victims of sexual assault, such as secrecy, helplessness,
accommodation, delayed disclosure, and disclosure. Perez, 25 S.W.3d at 833. The court found the
witness did not qualify as an expert to render an opinion regarding Dr. Summit's theories. The facts
of this case differ significantly—here, Coats did not describe the findings of a psychiatrist or attempt
to describe a syndrome, but explained her role as a sexual assault nurse examiner, the physical
findings she encountered, and that her training and experience made her aware that some children
delay reporting this crime for several reasons. In Hernandez, the holding of Perez was limited to the
witness' testimony about a psychiatrist's theories of pediatric psychiatry and did not address the
admissibility of that witness' own opinions based on her own experiences as an expert. Hernandez
v. State, 53 S.W.3d 742, 751 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd) (allowed same
witness to testify to "Child Abuse Accommodation Syndrome" that had been found to present
reversible error in Perez because in Hernandez, she expressed her own opinion, not theories of
another). Perez is not applicable to this case. 
            Escamilla also argues that the test of admissibility of this type of evidence is governed by
Kelly. See Kelly, 824 S.W.2d 568. The Kelly test of admissibility involved the consideration of
seven factors. Escamilla analyzes in his brief the evidence presented in light of the seven Kelly
factors and concludes that Coats' testimony falls short of meeting the requirement of Kelly. 
However, Escamilla fails to recognize that the Texas Court of Criminal Appeals has, since Kelly,
applied a different test to nonscientific expert testimony (i.e., that involving technical or other
specialized knowledge). The general principles of Kelly apply, but the specific factors outlined in
Kelly may or may not apply, depending on the context. Nenno v. State, 970 S.W.2d 549, 561 (Tex.
Crim. App. 1998), overruled in part on other grounds by State v. Terrazas, 4 S.W.3d 720, 727 (Tex.
Crim. App. 1999). When addressing fields of study aside from the hard sciences, such as the social
sciences or fields that are based primarily on experience and training as opposed to the scientific
method, Kelly's requirement of reliability applies, but with less rigor than to the hard sciences. 
Nenno, 970 S.W.2d at 561. The reliability of "soft" scientific evidence may be established by
showing that (1) the field of expertise is a legitimate one, (2) the subject matter of the expert's
testimony is within the scope of that field, and (3) the expert's testimony properly relies on and/or
utilizes the principles involved in the field. Weatherred v. State, 15 S.W.3d 540, 542 (Tex. Crim.
App. 2000); Nenno, 970 S.W.2d at 561. 
            We will apply the test set out in Nenno to determine the admissibility of Coats' testimony. 
We point out that the only objection concerning the expertise of Coats was made when Coats
originally began to discuss a delayed outcry. Escamilla only objected as to relevance concerning
Coats' testimony of the subject of "grooming" a child; therefore, the objection as to Coats' status as
an expert is not preserved as to that testimony. See Tex. R. App. P. 33.1(a). 
            (1) Is the field of expertise a legitimate one? 
            In Hernandez, the Houston First District Court stated that the field of expertise
(characteristics and dynamics of sexually abused children) was "certainly" a legitimate field as
recognized by Duckett v. State, 797 S.W.2d 906 (Tex. Crim. App. 1990). Hernandez, 53 S.W.3d
at 751. Our law has recognized this field of expertise as a legitimate one. Yount v. State, 872
S.W.2d 706, 708 (Tex. Crim. App. 1993); Cohn v. State, 849 S.W.2d 817, 819 (Tex. Crim. App.
1993); Kirkpatrick v. State, 747 S.W.2d 833, 835 (Tex. App.—Dallas 1987, pet. ref'd) (expert
testimony admissible about general behavioral traits of child victims, e.g., delay in reporting
incident); Hernandez, 53 S.W.3d at 751.
            (2) Is the subject matter of Coats' testimony within the scope of her field of expertise? 
            Coats is a registered nurse and is the director of surgical services at the Llano Hospital. She
is also the sexual assault nurse examiner (SANE) certified by the Texas Office of the Attorney
General. To become certified by the attorney general, she was required to have ninety-six hours of
clinical training, which consists of doing examinations, and she must also perform the required
number of examinations every two years on children and adults. She received her initial training
eleven years ago and has been doing sexual assault examinations since. She had previously testified
many times. Coats explained that her examination consists of taking a patient history, a head-to-toe
examination, a detailed genital examination looking for trauma, and the collection of forensic
evidence. She received training regarding the type of phenomenon that sexually assaulted children
exhibit. The three nurses in the SANE program do a quality assurance by reviewing the others'
charts for each examination, they attend peer review sessions, and a medical doctor reviews the
quality assurance. With her eleven years of experience with child sexual assault victims, Coats has
abundant personal observation and experience of common characteristics of sexually assaulted
children. It is well within her field of expertise and training to study and observe behavior of
affected children and to form the opinion that, for various reasons, children may not report this crime
immediately. "Experience alone may provide a sufficient basis for an expert's testimony." Id. at 751
(citing Gammill v. Jack Williams Chevrolet, Inc., 972 S.W.2d 713, 726 (Tex. 1998)). Coats did not
attempt to describe a medical or psychiatric syndrome, but presented evidence to allow the
conclusion that her training and experience provided an explanation for the reasons children delay
reporting sexual assaults. We find the subject matter of Coats' testimony within the scope of her
field of expertise. 
            (3) Does Coats' testimony properly rely on or utilize the principles involved in the
field?
 
            Coats trained as a registered nurse and had further training as a sexual assault examiner. It
is important to realize the scope of the testimony in dispute. Coats did not attempt to testify
regarding an overall profile or description of the characteristics of sexually assaulted children. 
Rather, her testimony was limited to basically describing what she had seen and experienced over
eleven years of conducting examinations of persons who had allegedly been sexually assaulted. 
Particularly, her testimony was that it was common for children who had been sexually assaulted to
delay reporting the assault because of fear or because such a report could have life-changing
consequences. This case illustrates this very point by the testimony of the child in question—after
reporting the assault to her sister, she had very mixed feelings about whether she wanted her sister
to tell their mother (i.e., "In a way I did, but in a way I didn't want her to say anything."). One of the
principles of this field would require the nurse/interviewer to accurately record the history from the
victim, physical findings, and observations of the child, and then to properly report them. Based on
Coats' years of experience with similar children, Coats could testify that it was common for children
to delay reporting this crime for the reasons she had observed. We find her testimony meets the
reliability requirement and hold that the trial court did not commit error by allowing her testimony. 
Issue 2—Did the trial court err in failing to delay the trial to allow for a defense witness? 

            Escamilla argues that, during the punishment phase, he had a witness who had been brought
to the courthouse by ambulance and that he had requested the trial court to delay the trial for a few
minutes. The trial court denied the request. Escamilla argues that such denial showed that the trial
court had already decided the issue of punishment and failed to consider the full range of
punishment. 
            After the State rested, the following occurred:
THE COURT: State has rested, [defense counsel]. Do you have witnesses?
 
[Defense counsel]: Judge, let me run downstairs and see who's arrived. 
 
(Break was taken)
 
[Defense counsel]: Judge, the one witness that I have, that's what the
ambulance is here for, and they've treated her and she needs a little bit more time
before she can come up the steps. Can you give me about another five minutes? 

                        THE COURT: No.

                        [Defense counsel]: We'll rest, Judge.

                        [State's counsel]: We close. 

            The only authority cited for Escamilla's argument is Ex parte Brown, 158 S.W.3d 449 (Tex.
Crim. App. 2005). In Brown, the trial court told the defendant that, if he violated community
supervision, the court would impose the maximum punishment and, in fact, did so. The Texas Court
of Criminal Appeals held that those actions indicated the trial court was prejudging the punishment
issue, and reversed. That authority has no bearing on the facts of this case. In essence, Escamilla
has presented no authority for the argument. Escamilla does not argue that the trial court abused its
discretion in denying the requested delay or that he was denied due process of law. No evidence was
presented regarding the content of the testimony of the witness. On appeal, the argument is
presented that the "only conclusion that can be drawn from such a refusal to grant a five (5) minute
delay is that the Judge had already made up his mind regarding Appellant's term of confinement." 
There may have been numerous reasons for the trial court's actions, and it certainly cannot be
deduced that the "only" conclusion is that the court had already determined the punishment to be
assessed and did not consider the full range of punishment. 
            Further, an oral motion for a continuance or postponement is not a statutory motion for
continuance and is addressed only to the equitable powers of the court. See Darty v. State, 149 Tex.
Crim. 256, 193 S.W.2d 195 (1946). It is reviewable only for abuse of discretion. See Vega v. State,
898 S.W.2d 359, 361 (Tex. App.—San Antonio 1995, pet. ref'd). Here, Escamilla presented no
information to the trial court concerning the nature of the testimony of the witness, whether it was
unique, or any other information regarding the necessity for the witness' testimony. 
            The trial court has the discretion to grant or deny continuances or delays of the trial and did
not err in denying the motion.
            We affirm the judgment of the trial court.



                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          January 20, 2006
Date Decided:             January 31, 2006

Do Not Publish