COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| | § | No. 08-10-00295-CV |
| | § | Appeal from the |
| IN THE MATTER OF | § | |
| C.E.S., A JUVENILE. | § | 65th Judicial District Court |
| | § | of El Paso County, Texas |
| | § | (TC# 07,01522) |
| | § | |

## OP I N I O N

C.E.S., a juvenile, appeals from an order adjudicating him for delinquent conduct of aggravated sexual assault of a child. On appeal, C.E.S. raises three issues for review. For the reasons that follow, we affirm.

### PROCEDURAL BACKGROUND

The State filed an original petition based on delinquent conduct on March 11, 2008. The State subsequently filed a first amended petition on March 18, 2009. In three counts, the amended petition alleged that on or about January 1, 2007, C.E.S. had engaged in delinquent conduct by: (1) committing aggravated sexual assault of a child, A.S., by contact of the sexual organ of C.E.S. to the sexual organ of A.S. (Count I); (2) committing aggravated sexual assault of

a child, A.S., by contact of the sexual organ of C.E.S. to the anus of A.S. (Count II); and (3) committing indecency with a child, A.S., by exposure (Count III).  *See* TEX. PENAL CODE ANN. §§ 22.021, 21.11 (West 2011).  An outcry hearing took place on May 13, 2010.[1]

At the beginning of the jury trial, on July 6, 2010, the trial court dismissed Count I and C.E.S. entered a plea of not true to Counts II and III.[2]  After the State rested its case-in-chief, C.E.S. moved for a directed verdict on Counts II and III, and the trial court granted C.E.S.'s directed verdict as to Count III, the indecency-with-a-child-by-exposure offense.  The jury then found that C.E.S. had engaged in the charged delinquent conduct, and the trial court entered an order of adjudication in accordance with the jury's finding and placed C.E.S. on supervised probation.  This appeal followed.

## FACTUAL BACKGROUND

In January 2007, C.E.S. and his cousin, A.S., resided in the home of their grandfather in El Paso, Texas.  At that time, C.E.S. was thirteen years old and A.S. was eight years old.

At trial, Veronica Casillas, A.S.'s aunt, testified that she was the sister of A.S.'s mother, Martha Montez, and C.E.S.'s mother, Margie Santos.  Casillas explained that A.S. stopped living with her mother at a young age because her mother was having a hard time.  A.S. was in the second grade when she went to live with Santos, at the home of A.S.'s grandfather.  C.E.S. also lived at that home during that time.  A.S. lived with Santos for about six months.  In the middle of January 2007, A.S. moved from her grandfather's house to Casillas' home.

In the summer of 2007, Casillas called the police after A.S. made statements to her about

---

[1]  After hearing the parties' arguments, the trial court determined that three different individuals qualified as outcry witnesses.
[2]  C.E.S. stipulated that he was the juvenile in this case, that he was born on June 22, 1993, and that on January 1, 2007, he was thirteen years old.

C.E.S. abusing her. A.S. had told Casillas that C.E.S. took her to Nichole's bedroom,[3] that he took off her clothes, got on top of her, and that he would "grind on her body." A.S. was scared and crying when she recounted this event to Casillas. A.S. did not have any physical injuries as a result of the abuse by C.E.S. Casillas did not take A.S. to a doctor because she did not want to traumatize A.S. According to Casillas, A.S. had not reported the abuse earlier because A.S. was scared because C.E.S. had told her that he would beat her up. On cross-examination, Casillas testified that she was not aware that A.S. had made previous statements of having been inappropriately touched by three other individuals.

At trial, El Paso Police Officer John Paul Valles testified that on July 16, 2007, he responded to a phone call made by Casillas. Officer Valles went to Casillas' home and spoke with A.S. Officer Valles testified that A.S. reported that C.E.S. "had done nasty things to her" and that she further explained that C.E.S. "had put his private or penis into her butt." During her conversation with Office Valles, A.S. drew a picture of that one particular incident of abuse.[4] No other evidence was collected because more than 72 hours had passed since the incident.

Laura M. Frescas, who was employed as a bilingual forensic interviewer with the Advocacy Center for the Children of El Paso in July 2007, testified that she interviewed A.S. on July 25, 2007. A.S. told her that C.E.S. had thrown her on the top bunk bed in his room, pulled down her underwear and pants, and that while she was facing down on the bed, he got on top of her.[5] A.S. used anatomical dolls to show Frescas that C.E.S. had penetrated A.S. in the anus with his penis. A.S. reported that the abuse had happened five separate times in different bedrooms of

---

[3] Nichole is the daughter of Santos.
[4] The drawing was admitted into evidence without objection.
[5] During the interview, A.S. drew a picture depicting these events. The picture was admitted as evidence over the objection of C.E.S.

3

her grandfather's house. A.S. did not report the abuse by C.E.S. earlier because she was afraid of C.E.S. because he was bigger than her and because he had told her not to tell.

On cross-examination, Frescas testified that when she asked A.S. if anyone else had ever touched her, A.S. indicated that three other individuals had touched her. On redirect, Frescas explained that it was common to have more than one offender when a child had an unstable environment and no one to protect her.

At trial, A.S. testified that she had lived in the same house as C.E.S. when she was eight years old, and that at that time, she was in the second or third grade. After she lived with C.E.S., she went to live with her aunt Veronica. A.S. told her aunt that C.E.S. had done something to her. A.S. told her aunt that C.E.S. would take her to these rooms, take off her pants and underwear, then take off his pants and underwear, and get on top of her while she was lying on her stomach. A.S. explained that she would be lying down because C.E.S. had told her to lie on her stomach. A.S. could not see C.E.S.'s "privates" when he took off his pants and underwear.

A.S. testified that C.E.S. would open his legs and sit on her legs. A.S. explained that C.E.S.'s private part would touch the inside of her butt and that C.E.S. would go up and down and would breathe hard. A.S. did not know what would make him stop. She testified that the abuse happened more than once and that it occurred in Nichole's room, C.E.S.'s brother's room, and his mom's room.[6] A.S. did not tell anyone about what had happened while she was living with C.E.S. because C.E.S. had threatened her. A.S. could not remember how long it took her to tell her aunt what had happened after A.S. had moved in with her aunt, but stated it took a little while. A.S.'s aunt called the police pretty soon after A.S. had told her aunt what had happened.

---

[6] A.S. stated that her Aunt Margie and her grandfather were living at the house when the abuse was taking place, but explained that her aunt was at work and that her grandfather was in his room.

On cross-examination, A.S. admitted that prior to going to live at her grandfather's house with C.E.S. and his family, she had previously made three outcries against three different people for inappropriate touching. A.S. testified that no one has touched her since moving in with her aunt Veronica.

## DISCUSSION

In three issues on appeal, C.E.S. contends that the trial court erred by permitting three outcry witnesses to testify at trial, that his trial counsel was ineffective, and that the evidence is legally and factually insufficient to support the jury's verdict.

### Multiple Outcry Witnesses

In Issue One, C.E.S. asserts that the trial court erred in allowing Casillas, Officer Valles, and Frescas to testify as outcry witnesses over his objections. We review a trial court's designation of an outcry witness under an abuse-of-discretion standard, and we will not disturb the exercise of that discretion unless the record clearly establishes an abuse of discretion. *Garcia v. State*, 792 S.W.2d 88, 92 (Tex.Crim.App. 1990). A trial court abuses its discretion when its ruling is outside the zone of reasonable disagreement. *Chapman v. State*, 150 S.W.3d 809, 813 (Tex.App. – Houston [14th Dist.] 2004, pet. ref'd).

On appeal, C.E.S. does not argue that Casillas was an improper outcry witness, but rather, contends that the trial court improperly allowed Officer Valles and Frescas to testify as additional outcry witnesses. C.E.S. further maintains that a new trial is required because the improper outcry testimony had a substantial and injurious effect or influence on the jury's determination of the verdict. Therefore, we must determine whether the trial court abused its discretion in admitting the testimony of the three individual outcry witnesses.[7]

---

[7] On appeal, the State argues that C.E.S. failed to provide the necessary record for review because he did not request

5

Article 38.072 of the Texas Code of Criminal Procedure creates a statutory exception to the hearsay rule and allows the first adult to whom a child makes a statement describing a sexual assault to testify to the child's outcry, if the statute's provisions are met. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072 (West Supp. 2012). The proper outcry witness is not the first adult to whom the child made the outcry, but instead the first adult to whom the child described the abuse in some discernible way. *Garcia*, 792 S.W.2d at 91. Outcry testimony is event-specific not person-specific and, as such, multiple outcry witnesses may testify when the outcry statements are about different events and not a repetition of the same events. *Polk v. State*, 367 S.W.3d 449, 453 (Tex.App. – Houston [14th Dist.] 2012, pet. ref'd).

The record establishes that the outcry A.S. made to Casillas was C.E.S. took A.S. to Nichole's bedroom, undressed her, got on top of her, and would "grind" on her body. Nothing in the record establishes that A.S. told Casillas that C.E.S. had placed his penis in her anus or that his penis had made any contact with her anus. However, it was during A.S.'s conversation with Officer Valles that A.S. first expressed "how, when, and where" C.E.S. had abused her. *See Reyes v. State*, 274 S.W.3d 724, 727 (Tex.App. – San Antonio 2008, pet. ref'd) (stating that the proper outcry witness is the first adult to whom the child shares the "how, when, and where" of the assault). Similarly, the record reflects that A.S. did not tell Casillas or Officer Valles that the abuse by C.E.S. occurred more than once or that it took place in different bedrooms of their grandfather's house.[8] In fact, the record reveals during the May 2010 outcry hearing, Officer Valles testified that A.S. only reported one incident to him. It was only during her interview with Frescas, that A.S. stated that there was more than a single incident of abuse and that it took place in different bedrooms. More specifically, A.S.

the outcry hearing record. However, C.E.S. subsequently supplemented the record. We note that the testimony presented by the outcry witnesses at the outcry hearing mirrors the testimony they provided at trial.

[8] We note that A.S.'s trial testimony appears to indicate that she told Casillas that C.E.S. took her into multiple rooms when he abused A.S. However, this testimony was not before the trial court at the outcry hearing nor does Casillas' testimony indicate that A.S. reported multiple events of abuse.

6

told Frescas about an incident that occurred on the bunk bed in C.E.S.'s room. Accordingly, we conclude that the trial court did not abuse its discretion in authorizing Casillas, Officer Valles, and Frescas to testify as outcry witnesses because in this case the outcry was not about a single event, but rather, it was about different events that took place in different locations. *See Polk*, 367 S.W.3d at 453 (no abuse of discretion found where trial court admitted the testimony of multiple outcry witnesses because the outcry was about different events and offenses).

Even if we assume that error occurred in this case, we have a reasonable assurance that any error was harmless because A.S. testified about the abuse inflicted upon her by C.E.S. in the same manner as the three outcry witnesses, however, with more detail, and without objection. *See Duncan v. State*, 95 S.W.3d 669, 672 (Tex.App. – Houston [1st Dist.] 2002, pet. ref'd) (trial court's admission of outcry witness's testimony was harmless where the same facts were admitted into evidence without objection). Issue One is overruled.

**Ineffective Assistance of Counsel**

In Issue Two, C.E.S. complains that his trial counsel rendered ineffective assistance of counsel because "[i]n a case which relied heavily on a child's testimony" his trial counsel failed to: (1) present expert testimony on the psychology of memory and the particular challenges to children's memories; (2) have C.E.S. take the stand and testify; and (3) present favorable character evidence.

To prevail on a claim of ineffective assistance of counsel, Appellant must satisfy a two-prong test by a preponderance of evidence showing that: (1) his attorney's performance was deficient; and that (2) his attorney's deficient performance deprived him of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Ex parte Chandler*, 182 S.W.3d 350, 353 (Tex.Crim.App. 2005). If the two-pronged test is not satisfied the ineffective assistance of counsel claim is defeated. *Rylander v. State*, 101 S.W.3d 107, 110-11

7

(Tex.Crim.App. 2003).

On review, we presume that the attorney's representation fell within the wide range of reasonable and professional assistance. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex.Crim.App. 2001) (quoting *Tong v. State*, 25 S.W.3d 707, 712 (Tex.Crim.App. 2000)). Accordingly, ineffective assistance claims must be firmly found in the record, and the record must affirmatively show the alleged ineffectiveness. *Mallett*, 65 S.W.3d at 63 (quoting *Thompson v. State*, 9 S.W.3d 808, 814 (Tex.Crim.App. 1999)). When the record is silent and does not provide an explanation for the attorney's conduct, the strong presumption of reasonable assistance is not overcome. *Rylander*, 101 S.W.3d at 110-11. We do not engage in speculation to find ineffective assistance when the record is silent as to an attorney's strategy at trial. *Robinson v. State*, 16 S.W.3d 808, 813 n.7 (Tex.Crim.App. 2000).

The record before us on appeal shows that C.E.S.'s ineffective assistance claim is not firmly founded in the record. First, the record is silent as to C.E.S.'s trial counsel's strategy. While it is conceivable that the offering of expert testimony in this case may have provided a more effective defense, due to the absence of an explanation as to why trial counsel decided not to call an expert witness, we will not speculate that trial counsel's decision did not constitute reasonable trial strategy. *See id*.

Second, although C.E.S. argues that his trial counsel was ineffective for not calling him to testify and asserts that he was not allowed to testify, the record does not support his allegations.[9] Unfounded allegations will not support a claim of ineffective assistance of counsel. *See Thompson*, 9 S.W.3d at 813-14; *Hawkins v. State*, 660 S.W.2d 65, 75 (Tex.Crim.App. 1983).

---

[9] The record reflects that when the trial court asked C.E.S.'s trial counsel if he knew if he was going to bring anyone up, trial counsel for C.E.S. responded, "[w]e haven't decided yet . . . ." This does not establish that C.E.S. was not allowed to testify or that C.E.S. wanted to testify.

Third, C.E.S. contends he was denied effective assistance of counsel because his trial counsel failed to offer any character witnesses. However, the record establishes that C.E.S.'s mother testified on his behalf and presented character evidence in his favor. Nevertheless, C.E.S. argues that because there were additional character witnesses who were willing to testify to his good character, his trial counsel was ineffective for not calling them to testify. These allegations are unsupported by the record. Without supporting evidence, we will not presume that trial counsel's decision was anything other than reasonable trial strategy. *See Robinson,* 16 S.W.3d at 813 n.7.

Based on the record presented, we conclude that the record fails to affirmatively demonstrate the alleged ineffective assistance of counsel and Appellant has failed to carry his burden of establishing ineffective assistance of counsel. *See Rylander*, 101 S.W.3d at 110-11; *Mallett*, 65 S.W.3d at 59. Issue Two is overruled.

**Sufficiency of the Evidence**

In Issue Three, C.E.S. challenges the legal and factual sufficiency of the evidence to support the jury's verdict that he committed delinquent conduct by committing the offense of aggravated sexual assault of a child.

While a juvenile proceeding is civil, we apply the criminal sufficiency standard. *In re A.O.*, 342 S.W.3d 236, 239 (Tex.App. – Amarillo 2011, pet. denied). We reject C.E.S.'s factual insufficiency claim because Texas no longer recognizes factual-insufficiency claims. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex.Crim.App. 2010) (stating that the legal sufficiency standard is the sole standard that a reviewing court should use to evaluate whether the evidence is sufficient to support each element of a criminal offense).

In reviewing the legal sufficiency of the evidence, we consider all the evidence in the light most favorable to the verdict, and determine whether a rational juror could have found the essential

9

elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed 2d 560 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). It is the responsibility of the jury to resolve conflicts in the testimony, to weigh the evidence, and to make reasonable inferences from the evidence. *Hooper*, 214 S.W.3d at 13; *Brooks*, 323 S.W.3d at 899. The jury can accept or reject all or part of the evidence presented. *Margraves v. State*, 34 S.W.3d 912, 919 (Tex.Crim.App. 2000), *overruled on other grounds*, *Laster v. State*, 275 S.W.3d 512 (Tex.Crim.App. 2009). On appeal, we do not reweigh the evidence and we do not substitute our own judgment for that of the jury. *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App. 2000). Any evidentiary inconsistencies are resolved in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex.Crim.App. 2000).

Specifically, C.E.S. argues that the evidence is legally insufficient to support his conviction because no credible evidence showed that C.E.S.'s penis penetrated the anus of A.S. On appeal, C.E.S. asserts that A.S.'s testimony about penetration was equivocal and unbelievable because there was no evidence of rectal tearing, or evidence that A.S. cried or screamed while she was being abused by C.E.S. A person commits aggravated sexual assault if he intentionally or knowingly causes the anus of a child to contact the mouth, anus, or sexual organ of another person, including the actor. *See* TEX. PENAL CODE ANN. § 22.021 (West 2011). C.E.S. was charged by petition for "intentionally or knowingly caus[ing] the anus of A.S., a child who was then and there younger than 14 years of age, to contact the sexual organ of C.E.S . . . ." Because the allegation against C.E.S. was for contact, and not penetration, we examine the record, in the light most favorable to the verdict to determine whether any evidence exists that A.S.'s anus contacted C.E.S.'s sexual organ.

At trial, in recounting the abuse by C.E.S., A.S. testified that C.E.S.'s private part would

10

touch the inside of her butt and explained that he would go up and down and that he would breathe hard. Additionally, the jury heard testimony from Officer Valles stating that A.S. had told him that C.E.S. had put his private into her butt. Frescas, the forensic interviewer, testified that during her interview with A.S., A.S. used anatomical dolls to show her that C.E.S. had penetrated A.S. in the anus with his penis. Thus, based on the foregoing testimony and evidence, a rational jury was entitled to believe and could reasonably have concluded that C.E.S. engaged in delinquent conduct by causing A.S.'s anus to contact C.E.S.'s sexual organ. *See Bargas v. State*, 252 S.W.3d 876, 888 (Tex.App. – Houston [14th Dist.] 2008, no pet.) (child victim's testimony alone was sufficient to support aggravated sexual assault convictions); *Johnston v. State*, 230 S.W.3d 450, 455 (Tex.App. – Fort Worth 2007, no pet.) (same); *Newby v. State*, 252 S.W.3d 431, 436 (Tex.App. – Houston [14th Dist.] 2008, pet. ref'd) (courts give wide latitude to the testimony given by child victims of sexual abuse); *cf. Mallet v. State*, 9 S.W.3d 856, 863-64 (Tex.App. – Fort Worth 2000, no pet.) (sufficient evidence to prove penetration of child's anus existed where child victim testified that the defendant's penis went inside of her butt or backside). While C.E.S. argues that A.S.'s testimony was equivocal and unbelievable, the jury was free to believe or disbelieve her testimony as presented. *See Margraves*, 34 S.W.3d at 919 (the jury is the judge of the credibility of the witnesses and it may accept or reject all or part of the testimony); *Hooper*, 214 S.W.3d at 13 (we must defer to the jury's responsibility to resolve conflicts, weigh evidence, draw reasonable inferences from the evidence).

Accordingly, we conclude that the evidence is sufficient to support the jury's finding that C.E.S. engaged in delinquent conduct by committing the aggravated sexual assault of a child under the age of fourteen. *See* TEX. PENAL CODE ANN. § 22.021 (West 2011). Issue Three is overruled.

11

## CONCLUSION

Having overruled C.E.S.'s three issues, we affirm the judgment of the trial court.


GUADALUPE RIVERA, Justice

April 30, 2013

Before McClure, C.J., Rivera, and Antcliff, JJ.
Antcliff, J., not participating