In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-14-00480-CV**
_____

**IN THE MATTER OF C.Z.S.**

**On Appeal from the County Court at Law No. 5**
**Montgomery County, Texas**
**Trial Cause No. 13-06-06568 JV**

**MEMORANDUM OPINION**

A jury found that C.Z.S. engaged in delinquent conduct. The trial court conducted a disposition hearing and placed C.Z.S. on probation. In five appellate issues, C.Z.S. challenges (1) the trial court's jurisdiction; (2) the admission of testimony from two witnesses; and (3) the legal and factual sufficiency of the evidence. We affirm the trial court's judgment.

Jurisdiction

In issue one, C.Z.S. argues that the trial court never acquired jurisdiction over him because he was not served with a petition and summons. In a juvenile case, the trial court must direct issuance of a summons to the juvenile defendant.

1

Tex. Fam. Code Ann. § 53.06(a)(1) (West 2014). "The summons must require the persons served to appear before the court at the time set to answer the allegations of the petition[]" and "[a] copy of the petition must accompany the summons." *Id.* § 53.06(b). The juvenile cannot waive service. *Id.* § 53.06(e). The record must affirmatively demonstrate that the juvenile was served with a summons. *In re D.W.M.*, 562 S.W.2d 851, 853 (Tex. 1978). "A valid officer's return creates the presumption of service and regularity, and the burden is on the defendant to show inadequacy of service." *In re J.I.A.*, No. 01-12-00791-CV, 2013 Tex. App. LEXIS 15106, at *6 (Tex. App.—Houston [1st Dist.] Dec. 17, 2013, no pet.) (mem. op.). The record must contain some indication that a copy of the petition was served. *Id.* at **6-7.

The record indicates that C.Z.S. was served with a summons on July 1, 2013. The summons states that a copy of the petition is attached and it commands C.Z.S. to appear before the trial court and answer the attached petition. C.Z.S.'s parents were also served. C.Z.S. and his parents subsequently acknowledged having received a copy of the petition. Because the record contains an officer's return that is valid on its face, and the summons indicates that a copy of the petition was served, service is afforded a presumption of regularity. *See id.* at *8. C.Z.S.'s mere assertion that he was not served with a summons and a copy of the

petition is insufficient to rebut this presumption. *See id.* at *9. Because the record affirmatively demonstrates that C.Z.S. was properly served, we conclude that the trial court acquired jurisdiction over C.Z.S. *See D.W.M.*, 562 S.W.2d at 853. We overrule issue one.

Sufficiency of the Evidence

In issues four and five, C.Z.S. contends that the evidence is legally and factually insufficient to support the jury's conclusion that he engaged in delinquent conduct. "We review adjudications of delinquency in juvenile cases by applying the same standards that we apply to sufficiency of the evidence challenges in criminal cases." *In re I.A.G.*, 297 S.W.3d 505, 507 (Tex. App.—Beaumont 2009, no pet.). In criminal cases, "the *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). This Court still applies the factual sufficiency standard to civil commitment cases under the sexually violent predator statute. *See In re Commitment of Day*, 342 S.W.3d 193, 206-13 (Tex. App.—Beaumont 2011, pet. denied). Juvenile proceedings, while also civil in nature, entitle a juvenile to double jeopardy protections. *In re J.R.R.*, 696 S.W.2d 382, 384 (Tex. 1985); *see*

*generally In re C.H.*, 412 S.W.3d 67, 75 (Tex. App.—Fort Worth 2013, pet. denied). In contrast, the SVP statute does not implicate double jeopardy principles. *See Kansas v. Hendricks*, 521 U.S. 346, 369-70 (1997); *see also In re Commitment of Fisher*, 164 S.W.3d 637, 653 (Tex. 2005).

Given this distinction, the only standard we will apply, in accordance with *Brooks*, is that of legal sufficiency. *See Brooks*, 323 S.W.3d at 895; *see also In re C.E.S.*, 400 S.W.3d 187, 194 (Tex. App.—El Paso 2013, no pet.); *In re R.R.*, 373 S.W.3d 730, 734 (Tex. App.—Houston [14th Dist.] 2012, pet. denied); *In re H.T.S.*, No. 04-11-00847-CV, 2012 Tex. App. LEXIS 10772, at **22-23 (Tex. App.—San Antonio Dec. 31, 2012, pet. denied) (mem. op.). For this reason, we need not address issue five challenging factual sufficiency. *See* Tex. R. App. P. 47.1. Under a legal sufficiency standard, we assess all the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We give deference to the jury's responsibility to fairly resolve conflicting testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13.

The State's petition alleged that C.Z.S. engaged in delinquent conduct by committing indecency with a child against R.S. R.S. testified that she wanted to play with C.Z.S. and C.Z.S. told her he would play if R.S. touched his private parts. R.S. testified that she touched C.Z.S.'s penis with her fingers. R.S.'s mother testified that R.S. told her different stories before she admitted that C.Z.S. had abused her. R.S. testified that she was initially untruthful because she thought she had done something wrong and did not want to get in trouble. She denied seeing anything "nasty" at her father's house and testified that no one told her what to say at trial.

Susan Odhiambo, a forensic interviewer, testified that when she interviewed R.S., R.S. initially denied any abuse. However, after Odhiambo asked R.S. if she had told her mother about being made to touch someone, R.S. told Odhiambo that C.Z.S. made her touch his "pee pee." R.S.'s mother did not believe that C.Z.S. abused R.S., but she believed that R.S. saw something at her father's house and that her father had prompted R.S. to accuse C.Z.S. so as to clear himself from any wrongdoing. R.S.'s father testified that he had no reason to lie to the court or to encourage R.S. to lie. C.Z.S.'s mother testified that C.Z.S. told her, in a letter, that nothing physical occurred, but that he "maybe [he] said something stupid[]" to R.S. She did not believe that C.Z.S. had anything to do with the allegations against him.

Dr. Lawrence Thompson, a psychologist, testified that it is not unusual for child abuse victims to give a delayed disclosure. Thompson testified that he has witnessed times when children have recanted allegations of sexual abuse for various reasons, such as the abuse did not happen or the child is being pressured to recant. He explained that when a child knows the perpetrator, the child can be reluctant to disclose abuse and can be manipulated. Thompson testified that it is not uncommon for some family members to believe the abuse occurred, while others believe there was no abuse. He stated that it is not unusual for abused children to act normal or to fear getting into trouble if they disclose the abuse. As an example of grooming, Thompson identified an instance when the perpetrator tells the child to "[d]o this sexual act, and I'll play with you."

In this case, the State alleged that C.Z.S. committed indecency with a child by (1) engaging in sexual contact with R.S.; and (2) with intent to arouse or gratify the sexual desire of any person, exposed his anus or any part of his genitals, knowing R.S. was present.[1] *See* Tex. Penal Code Ann. § 21.11(a)(1), (2)(A) (West 2011). The jury heard R.S. testify that C.Z.S. said he would play with her if she touched his penis, which she did. She eventually disclosed the abuse to her mother and to Odhiambo. R.S. explained that she initially failed to disclose what occurred

---

[1]The State also alleged attempted indecency with a child, but the jury declined to find this count true.

because she was afraid she had done something wrong and would be in trouble if she told the truth. The jury heard Thompson explain that it is not uncommon for child victims to delay a disclosure or to be afraid of getting into trouble for disclosing the abuse. Thompson's testimony also demonstrated that an example of grooming includes a perpetrator promising to play with the child in exchange for the child engaging in a sexual act.

The jury was entitled to infer the requisite intent to arouse or gratify sexual desire from C.Z.S.'s conduct and remarks, and all the surrounding circumstances. *See H.T.S.,* 2012 Tex. App. LEXIS 10772, at **26-27; *see also Scott v. State*, 202 S.W.3d 405, 408 (Tex. App.—Texarkana 2006, pet. ref'd). Additionally, R.S.'s testimony alone is sufficient to support a finding of indecency with a child. *See In re A.B.*, 162 S.W.3d 598, 601 (Tex. App.—El Paso 2005, no pet.). Viewing the evidence in the light most favorable to the verdict, we find that the jury could reasonably conclude, beyond a reasonable doubt, that C.Z.S. committed indecency with a child. *See Jackson*, 443 U.S. at 318-19; *see also Hooper*, 214 S.W.3d at 13. We overrule issue four.

## Evidentiary Rulings

In issues two and three, C.Z.S. challenges the admission of testimony from Thompson and Odhiambo. "A trial court has broad discretion in determining the

admissibility of the evidence[.]" *Allridge v. State*, 850 S.W.2d 471, 492 (Tex. Crim. App. 1991). We review a trial court's evidentiary rulings for abuse of discretion. *Oprean v. State*, 201 S.W.3d 724, 726 (Tex. Crim. App. 2006). Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." Tex. R. Evid. 103(a); *see* Tex. R. App. P. 44.2(b).

In issue two, C.Z.S. contends that the trial court abused its discretion by allowing Thompson to testify because, according to C.Z.S., Thompson's testimony was not relevant to whether C.Z.S. had committed the offense. Outside the jury's presence, Thompson testified that he had not reviewed documents or interviewed witnesses in connection with C.Z.S.'s case and had no specific knowledge of the facts. He explained that the purpose of his testimony was "[t]o provide information to the jury from my clinical experience, from the research related to child sexual abuse so that they can apply [it] to this case as they see fit." Thompson testified that he would be discussing what an outcry is, that disclosure of sexual abuse is a process, the effects of child abuse on the victim, how the child victim might testify, and grooming. C.Z.S. argued that Thompson's testimony was irrelevant to the facts of the case. The trial court overruled C.Z.S.'s objections.

Relevant evidence is that which "has any tendency to make a fact more or less probable than it would be without the evidence" and is a fact of consequence in determining the action. Tex. R. Evid. 401. "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Tex. R. Evid. 702. Expert testimony regarding the characteristics commonly displayed by child victims of sexual abuse is admissible. *Tillman v. State*, 354 S.W.3d 425, 440 (Tex. Crim. App. 2011); *Cohn v. State*, 849 S.W.2d 817, 818-19 (Tex. Crim. App. 1993). This type of testimony satisfies Rule 702 because it allows the jury to "assess the credibility of a particular complainant more fairly by explaining the emotional antecedents underlying the typical victim's behavior[.]" *Kirkpatrick v. State*, 747 S.W.2d 833, 836 (Tex. App.—Dallas 1987, pet. ref'd). Because Thompson's testimony was intended to explain the traits of child sexual abuse victims, we conclude that the trial court did not abuse its discretion by allowing Thompson to testify. *See Tillman*, 354 S.W.3d at 440; *see also Cohn*, 849 S.W.2d at 818-19; *Kirkpatrick*, 747 S.W.2d at 836; Tex. R. Evid. 702. We overrule issue two.

In issue three, C.Z.S. maintains that the trial court abused its discretion by allowing Odhiambo to testify because she was not the first person to hear R.S.'s outcry. Outside the jury's presence, Odhiambo testified that R.S. told her that she had been sexually abused by C.Z.S. C.Z.S. objected to Odhiambo's testimony on grounds that she was not the first outcry witness and she did not follow proper protocol during her interview with R.S. The trial court found Odhiambo to be a proper outcry witness.

Assuming, without deciding, that the trial court abused its discretion by allowing Odhiambo to testify as an outcry witness, we cannot say that the error affected C.Z.S.'s substantial rights. *See* Tex. R. Evid. 103(a); *see also* Tex. R. App. P. 44.2(b). R.S. testified, without objection, to the details of the alleged offense. "'[O]utcry' testimony is necessarily cumulative of a complainant's testimony." *Cordero v. State*, 444 S.W.3d 812, 820 (Tex. App.—Beaumont 2014, pet. ref'd) (quoting *Shelby v. State*, 819 S.W.2d 544, 551 (Tex. Crim. App. 1991)). Moreover, "improper admission of evidence is not reversible error if the same or similar evidence is admitted without objection at another point in the trial." *Chapman v. State*, 150 S.W.3d 809, 814 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). Because the admission of Odhiambo's testimony was harmless, we overrule issue

three. Having overruled C.Z.S.'s appellate issues, we affirm the trial court's judgment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on May 4, 2015
Opinion Delivered May 28, 2015

Before McKeithen, C.J., Horton and Johnson, JJ.

## DISSENTING OPINION

Because the majority refuses to address the factual sufficiency challenge that C.Z.S. raised in issue five of his appeal, I do not agree with that portion of the court's opinion. Nevertheless, I concur in the Court's resolution of issues one through four of the appeal.

According to the opinion of the Court, the Court is not required to resolve C.Z.S.'s factual sufficiency issue, issue five, because a decision to grant a new trial in a juvenile case implicates the Double Jeopardy Clause, which applies to the States by virtue of the Due Process Clause. U.S. CONST. amend. V; U.S. CONST. amend. XIV; *Benton v. Maryland*, 395 U.S. 784 (1969). Generally, an appellate court's decision to award a new trial after conducting a factual sufficiency review does not violate the defendant's rights under the Double Jeopardy Clause. *Tibbs v. Florida*, 457 U.S. 31, 45 (1982) (explaining that when the appellate court reverses a conviction after determining that the evidence does not rationally support a verdict, "the Double Jeopardy Clause does not prevent an appellate court from granting a convicted defendant an opportunity to seek acquittal through a new trial"). I disagree with the majority's assumption that the Double Jeopardy Clause requires it to ignore the factual sufficiency issue raised by C.Z.S. in his appeal.

In my opinion, we are obligated to conduct a factual sufficiency review in a case involving an appeal from a juvenile court. Appeals from juvenile courts are governed by "[t]he requirements governing an appeal . . . as in civil cases generally." Tex. Fam. Code Ann. § 56.01(b) (West 2014). The Rules of Appellate Procedure require the courts of appeal to "address[] every issue raised and necessary to final disposition of the appeal." Tex. R. App. P. 47.1. The Texas Constitution provides that the courts of appeal "shall be conclusive on all questions of fact brought before them on appeal or error." Tex. Const. art. V, § 6. Therefore, addressing C.Z.S.'s factual sufficiency claim is necessary, as the merits of his claim cannot be addressed by the Texas Supreme Court. Tex. Gov't Code Ann. § 22.225(a) (West Supp. 2014) ("A judgment of a court of appeals is conclusive on the facts of the case in all civil cases.").

As directed by the Texas Supreme Court, the courts of appeal are to weigh all of the evidence for and against the factfinder's finding when conducting a factual sufficiency review. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). Unlike the standard of review that applies to the review of a legal sufficiency issue, a standard that requires the appeals court to indulge in every inference favorable to the factfinder's conclusions, in a factual sufficiency review the court must evaluate all of the evidence admitted during a trial and determine if

2

the jury's finding, while legally sufficient, is nevertheless still clearly wrong and unjust. *See City of Keller v. Wilson*, 168 S.W.3d 802, 812, 819-20 (Tex. 2005); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

The majority relies on the Court of Criminal Appeals opinion in *Brooks* to avoid resolving C.Z.S.'s factual sufficiency issue. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). In addition to *Brooks*, the majority relies on three opinions of our sister courts, all of which relied on *Brooks* without fully evaluating whether civil standards of review applied in appeals taken from juvenile courts despite the conclusion reached in *Brooks* that such a review was unavailable in a criminal case. *See In re C.E.S.*, 400 S.W.3d 187, 194 (Tex. App.—El Paso 2013, no pet.); *In re R.R.*, 373 S.W.3d 730, 734 (Tex. App.—Houston [14th Dist.] 2012, pet. denied); *In re H.T.S.*, No. 04-11-00847-CV, 2012 Tex. App. LEXIS 10772, at **22-23 (Tex. App.—San Antonio Dec. 31, 2012, pet. denied) (mem. op.). However, *Brooks* concerned the appeal of a criminal case, not a case from a juvenile court. *Brooks*, 323 S.W.3d at 905 (noting that Brooks was convicted of possession with the intent to deliver cocaine). And, the opinions issued in *In re C.E.S.*, *In re R.R.*, and *In re H.T.S.*, except for their stated reliance on *Brooks*, fail to explain why they chose not to apply a factual sufficiency standard to the reviews they conducted. *Id*. Finally, even though the Legislature has directed the courts on

the standards to apply in appeals from juvenile courts, the Texas Supreme Court has not addressed whether the civil standards for appeals apply in juvenile cases when those standards are inconsistent with the standards that apply in criminal cases. *See In re L.D.C.*, 400 S.W.3d 572, 574-75 (Tex. 2013) (acknowledging the different criminal and civil standards applied to "unobjected-to charge error," but concluding the error was not harmful in the juvenile case being appealed under either standard).

In my opinion, until the Texas Supreme Court directs otherwise, Texas law requires that the Court address C.Z.S.'s factual sufficiency claim.[2] In my opinion, double jeopardy concerns are not raised by reviewing the Appellant's case utilizing a factual sufficiency standard of review. Therefore, I disagree with the majority's decision to not reach the Appellant's factual sufficiency issue; instead, in reviewing issue five, I would adopt the approach to conducting a factual sufficiency review that we used in *In re Commitment of Day*, 342 S.W.3d 193, 206-13 (Tex. App.—Beaumont 2011, pet. denied). Regardless of the outcome of the process, we are obligated to conduct a factual sufficiency review, as C.Z.S. has not waived his right to have issue five reviewed.

---

[2]While in my opinion the factual sufficiency issue that C.Z.S. raises should be reached in resolving the appeal, I do not intend to imply how the issue, if addressed, should be resolved.

4

_____
HOLLIS HORTON
Justice

Dissent Delivered
May 28, 2015